<hr />

## ALEXANDER NEWTON *v.* PELEG EDDY.

### *Riparian boundaries.    Alluvion.*

Where there are adjoining proprietors of land upon the same side of a stream of water, and they are each bounded upon the stream, and the corner between them, upon the stream, is indicated by a fixed monument upon the bank of the stream, the true corner is at that point in the centre of the stream, which is nearest to the monument, and its direction from the monument will be changed by the changes of the course of the stream.

In this case the corner named in the deeds was a tree upon the west bank of the stream, and the point in the centre of the stream nearest to the tree, at the date of the deeds, was easterly from the tree, and in the continuation of the line between the proprietors extending from the west to the tree,—the stream then running by the tree from the south northerly ; but by the changes in the course of the stream alluvion was formed upon its west bank, and the direction of the stream was changed, so that it flowed by the tree from the east towards the west, and the point in the centre of the stream nearest to the tree became north of the tree, so that a line extending from the tree to that point was nearly at right angles with the line extending from the west to the tree; and it was held, that the location of the true corner was thus changed to the point in the centre north of the tree, and that all the alluvion, formed upon the west bank of the stream above that point belonged to the party who owned the land above the tree.   REDFIELD, J., dissenting.

EJECTMENT for land in Clarendon.   The suit was referred, under

a rule from the county court, and the referee reported the facts substantially as follows.

The plaintiff claimed the land described in his declaration as part of the farm on which he lives,—which lies north of and adjoining the farm of the defendant. The defendant claimed title to his farm, through several intermediate conveyances, under a deed from Jedediah Clark, Jr., to Silas Hodges, dated April 17, 1793, in which the land was described as follows ;—" adjoining southerly on Dr. Silas 'Hodges' north line of land the said Hodges bought of Abraham & · Alfred Hathaway ; easterly on Otter Creek, and down said creek ' to a small butternut tree, marked, which is the north east corner of ' said lot ; thence west fifteen degrees north, so far as to contain one 'hundred·acres of land, making angle south." The plaintiff claimed title to his farm, through intermediate conveyances, under a deed from David Whitney to Randall Rice and Henry Hodges, dated July 9, 1804, in which the first bound was described as being " at the ' north east corner of land belonging to the estate of the late Dr. ' Silas Hodges deceased, and is the lot commonly called the Rich ' lot, which the said Hodges bought of Jedediah Clark, Jr., on the ' west bank of Otter creek, and is the south east corner of the farm ' here described ;" the fourth line was described, as running east ": to ' the west bank of Otter Creek ;" and the closing line was described as running thence, " as said creek now runs, to the first mentioned ' bound." It appeared that anciently the course of the bank of Otter creek, by the butternut tree,—the stump of which still remains standing and was admitted to be the actual corner of the two farms, —was nearly north, and the tree stood upon the bank, and the course of the river, running towards the butternut, was northwesterly ; but the course of the river has gradually changed, so that its course towards the butternut is nearer west, and the course of the bank opposite·the butternut is now nearly west ; and as the river has gradually changed its course, it has worn off the bank on its northerly side, and land has formed on the northerly side of the defendant's land, and the butternut is now about twenty feet from the creek, south, so that extending the south line of the plaintiff's farm east from the butternut to the creek, it would cut off from the north side of the meadow occupied by the defendant, south of the creek, about

Newton *v.* Eddy.

fifty rods of land east of the butternut.* The defendant was in possession of this disputed tract, at the commencement of this suit. For more than twenty years, previous to the commencement of this suit, a fence was continued, extending northerly from the butternut tree to the bank of the river.

The plaintiff claimed, that the land formed between the river and a line made by extending the south line of his farm from the butternut to the creek belonged to him, and that he was entitled to recover it in this action; but the referee,—reporting that he intended to decide according to law,—decided, that the plaintiff and defendant, being bounded by a line upon the river to the butternut tree, each owned to the centre of the channel of the river,—which was about five rods in width,—and that, as the river gradually receded and land formed, the legal boundary of each proprietor receded with the river, and remained in the centre of the river, and the corner would be opposite the butternut tree; but that the plaintiff could not, by this gradual formation of land, gain any right up the stream, above the butternut, nor could the defendant gain any right below; and that the land so formed up the stream from the butternut did not belong to the plaintiff, and that therefore he could not recover against the defendant in this suit.

The county court, September Term, 1848,—HALL, J., presiding, —accepted the report and rendered judgment thereon for the defendant. Exceptions by plaintiff.

---

* Plan of the premises. From *a* to *c*, original bank of Otter Creek. *b*, Butternut tree. From *a* to *b*, old fence.

*S. H. Hodges* and *S. Foot* for plaintiff.

The referee held, in effect, that the point in the centre of the stream, where it is nearest the butternut tree, is the terminating boundary between the parties. This point, however, is liable to constant change, and under this rule the rights of the parties can never be settled. Should the stream, as it shifts its bed continually, approach the tree most nearly in a southerly direction, and flow off to the east, not only all the land in dispute, but more yet, would belong to the plaintiff. How it will be, when the creek approaches the tree equally near on the north and south sides could not be determined. We insist, that the true rule must be one, that leaves the ownership to accretions less doubtful and liable to change. In cases like the present the obvious and best one would be, to extend the line dividing the farms of the parties in the same direction through the new made land. In all cases parallel lines, perpendicular to the main course of the stream, or shore, are preferable to those adopted in Massachusetts, or Maine. However that may be, the rule assumed in this report is clearly erroneous. *Deerfield* v. *Arms*, 17 Pick. 41. *Everson* v. *Taylor*, 9 Greenl. 44. Ang. on Water Courses, sec. 55, 56.

The effect of the present decision is to give to the defendant land, which once clearly belonged to the plaintiff. The division line between their farms formerly ran east from the butternut tree to the centre of the creek, and the land north of it was the plaintiff's. Under this report the defendant will hold that part of this land, which lies east of a line proceeding north from the butternut tree to the present centre of the stream.

*E. Edgerton* for defendant.

It is insisted, that the referee was under no mistake as to the law, and that his report should not, therefore, be set aside. *White et al.* v. *White*, 21 Vt. 250. *Learned* v. *Bellows*, 8 Ib. 83. The only legal points decided by the referee are, first, that the boundary between the farms of the parties extends to the centre of the creek,— that the actual corner between them was in the centre of the creek and opposite the butternut tree,—and that, as the stream has receded, the corner has receded also, and now remains in the stream opposite the tree;—and second, that the accretion up stream, above

the butternut, does not belong to the plaintiff. 3 Kent 428. *Child* v. *Starr*, 4 Hill 369.

The opinion of the court was delivered by

REDFIELD, J. This is a case, which comes into this court on exceptions to the decision of the county court, in accepting a report of referees. The referee states the facts proved in the case, and says, that he intended to decide according to law. This brings the case precisely within the rule laid down in *Johns* v. *Stevens et al.*, 3 Vt. 308.

The only remaining question in the case is, whether the referee mistook the law; for if so, the judgment of the county court should have been against the sufficiency of the report. We are unable to say, that he did mistake the law. The case is so peculiar, that any decision upon it will not be likely to establish any general rule. And we are not able to agree, that it has effected any injustice in the particular case.

I should myself have preferred a somewhat different rule,—one which should have divided the land made by accretion between the parties, according to the general rule of the civil and common law in regard to alluvion formed by gradual accretion. I understand that rule to be, to give, as nearly as can well be done, to each proprietor, that portion of the alluvion, which is formed upon his portion of the shore. If, therefore, alluvion were forming upon the shore of a stream, belonging to different proprietors, we should expect that it would naturally fall, in some proportion, either equal, or unequal, to both proprietors. But the rule adopted by the referee in this case gave the whole alluvion to the defendant, and, as I understand the case, gave also to the defendant a portion of what was originally the plaintiff's land.

This result is allowed, for the reason that the corner near the butternut tree was intended to be a moveable corner. That was the opinion of the referee, and of a majority of this court. To me it seems, that, the east line of the plaintiff's and defendant's land running in the middle of the stream, as all agree, the corner was a fixed point in the stream, opposite the butternut,—which is referred to as a monument, indicating where the real corner was to be found, since no nearer permanent monument was to be found; and that

that point is to be determined with reference to the state of the stream at the date of the deed; and that no subsequent changes in the stream would move this point, except in the direction of the *alluvion*.

If this be so to be regarded, then the receding of the middle line of the stream, while it gave more land to both parties, could not have the effect to change what was once the plaintiff's to the defendant's, or *vice versa*, because they were both upon the same side of the stream. And all that could be required is, that the accretion should be divided between these parties according to some equitable rule.

But if the words of these deeds, or what is the same thing, if their legal construction fixes this corner in the middle of the stream, at that point which is nearest the butternut, then there is no more ground of complaint, that by the *alluvion* the plaintiff has lost a portion of his land, than there is in every case, where one loses land by alluvion. And that this has gone to the defendant is no more, in this view of the case, a just ground of complaint, than it is for the opposite owner, that *his* land has gone, by the same process, into the defendant's hands. It is the result of the legal construction of his title deeds, and of the course of nature,—both of which are contingencies, which every one must be subject to. And this, in the opinion of the majority of the court, is the true state of the case.

Judgment affirmed.

REDFIELD, J., dissenting.