BATCHELDER *v.* KENISTON.

Land formed by alluvion, on the bank of a river not navigable, by the gradual wearing away of the opposite bank, is to be divided, ordinarily, among the riparian owners entitled to it according to this rule : Ascertain the length of the old shore line, and of the part of it belonging to each proprietor ; then measure off for each proprietor a part of the new shore line in proportion to what he held in the old shore line ; and then draw lines from the boundaries at the ancient bank to the points of division on the new shore, as thus ascertained. In this way, if such land is formed in the bend of a river, and the new shore line is just one half the length of the old one, each proprietor will take of the new shore line just one half the extent of his former shore line.

WRIT OF ENTRY, by Clark G. Batchelder against John Keniston, to recover a parcel of land recently formed by alluvial deposit in the bed and on the margin of the Pemigewasset river in Plymouth. The land lies and has been formed in a bend of the river, as it formerly ran, where it turned from a westerly to a southerly course, making very nearly a right angle. By a gradual wearing away of the bank on the inside of this curve or angle, and deposit on the other side, the bed of the river has changed until it now runs in a south-westerly direction across the point of land embraced within the angle of the ancient

shore line ; and the land thus formed on the north-westerly side of the present stream constitutes the premises in dispute.

"A brook or small stream flowing from a north-westerly direction entered the river, as it formerly ran, at the point of the angle or bend above mentioned, and now enters the old bed of the river at or near the same point, and flowing southerly enters said river, as it now runs, southerly of the land in dispute, as shown on the plaintiff's original plan used at the trial. Said plan may be used and referred to at the argument." For the purposes of the case, it is admitted that at the time this formation began, the demandant was, and ever since has been, the owner of land lying on the westerly side of the river, as it formerly ran, below the bend ; and that the tenant, during the same time, has been the owner of land adjoining on the north and extending easterly along the northerly side of the river, as it formerly ran, above the bend. Both parties claim the premises in dispute as accretion to their respective lots. In case both parties are riparian proprietors, which for the purposes of this case is not to be in dispute, the question is, To which does this alluvion belong ? and if not all of it to either party, then by what rule is it to be divided between them ?

Any questions of fact which either party may hereafter desire to have tried by jury are left open to them, without prejudice from any admission in this case.

The case was reserved.

*Leverett & Blair* and *Carpenter*, for the plaintiff.

I. That neither party is entitled to the whole of the land in question is sufficiently plain. *Deerfield* v. *Ames*, 17 Pick. 41 ; *Rust* v. *Boston Mill*, 6 Pick. 158 ; *Emerson* v. *Taylor*, 9 Greenl. 44 ; *Sparhawk* v. *Bullard*, 1 Met. 95–106 ; *Knight* v. *Wilder*, 2 Cush. 199 ; *Newton* v. *Eddy*, 23 Vt. 319.

II. The foregoing cases also give the rule by which the division should be made. We think the correct principle, as applicable to this case, is that laid down in *Deerfield* v. *Arms*, 17 Pick. 41.

*Pike & Blodgett* and *Burrows*, for the defendant.

I. Nearly all the cases cited by the plaintiff have no application, being predicated upon the Colonial ordinance of 1647, which is applicable only to tide waters and navigable streams. As to the rule established by the U. S. Supreme Court, see *Jones* v. *Johnston*, 18 How. 150. In the statement of the case *Sparhawk & Wife* v. *Bullard*, 1 Met. 97, it is said, with approval, that C. J. SHAW instructed the jury, in a former trial of the case, " that if they should find there was naturally and originally any creek in which the tide ebbed and flowed, and from which it did not ebb entirely at the time when, from natural causes, it ebbed the lowest, this would constitute a boundary of the flats, beyond which the demandants were not by law entitled to recover."

II. By the amendment to this case, " a brook or small stream entered the old bed of the river at the angle or bend," and now enters the river southerly of the land in dispute; and, by the plan referred to, it appears that said brook flows along the old bed of the river, until it meets the waters of the river which set back along the old channel as indicated on said plan.   There is, then, the running water of the brook and river along the old channel, constituting a boundary, beyond which the plaintiff is not entitled to recover.

BELLOWS, C. J.   At the point where the land in question was formed, the river originally ran westerly some distance, and then, turning nearly at a right angle, ran in a southerly direction.   On the northerly side of the bend was the defendant's land, and on the westerly side the plaintiff's.

By the gradual wearing away of the bank on the southerly side of the river and the deposits on the other side, the land in question was formed against the lands of the plaintiff and the defendant.   Had the ancient bed of the river been straight against the lands of the parties, each would have taken the newly formed land in front of him by lines perpendicular to the general course of the river at that point; but the difficulty here arises from the fact that the river turns and forms nearly a right angle near the line between the parties.   The case of *Deerfield* v. *Arms*, 17 Pick. 41, was much like the present.   There the new land was formed in a bend of the Deerfield river, and the parties owned lands on each side of the bend, divided in a manner similar to the present case.   It was held that each owner was entitled to a share of the alluvial deposit, to be ascertained in this way : Give to each owner a share of the new shore line in proportion to what he held in the old shore line ; that is, if the old shore line was two hundred rods in length, A's share being one hundred and fifty rods and B's fifty, and the new shore line is but one hundred rods in length, then A would take seventy-five rods and B twenty-five rods of that line ; and then the division of the land would be completed by running a line from the bound between the parties on the old river bank to the point thus determined on the newly formed shore or river bank.   SHAW, C. J., says this rule is found in a work on the civil law—"A collection of new decisions by Denisart," published in France.   This rule seems to have been extensively recognized as just and convenient. It goes upon the ground that in making a division of such alluvion, two objects should be kept in view,— namely, to give each proprietor a fair share of the land, and to secure to him access to the river by giving him a share of the bank in proportion to the share of the original shore owned by him. *Deerfield* v. *Arms*, before cited.   The rule is recognized in Angel on Tide Waters 258, 259, and cases cited ; Angel on Watercourses, secs. 55, 56.   The rule, in fact, is substantially upon the same principle as that which governs the division of flats, in the case of a cove the mouth of which is of less width than the uplands to which the flats belong.   And there the lines are to be run from the divisional lines of the several owners of the upland to low

water mark, converging towards each other so as to give each proprietor his proportionate share of the flats. If the mouth of the cove is of the same width as the upland, then the divisional lines should be parallel, and at right angles with a line drawn across the mouth of the cove. This rule was recognized. and adopted in *Rust* v. *Boston Mill Corporation,* 6 Pick. 167, 168 ;—also, in *Sparhawk & Wife* v. *Bullard,* 1 Met. 107 ; *Valentine* v. *Piper,* 22 Pick. 96 ; *Gray* v. *Deluce,* 5 Cush. 12. The same rule is laid down and recognized in Angel on Tide Waters, p. 232, and cases cited. The present case, indeed, involves the same principle, and the rule for dividing flats in a cove between the proprietors, by the upland, applies here.

The titles of the plaintiff and the defendant extended originally to the thread of the river. As the bed of the river gradually changed by the wearing away of the opposite bank, and the deposit of the material on the lands of the plaintiff and the defendant, the line of their land still continued to be the thread of the stream in its new bed, and the new land is formed by deposits upon the flats belonging to the several parties, which flats are extended as the river recedes ; and as the extent of the shore line was diminished by the river cutting across instead of going round this bend, the case obviously stands like a division of flats in a cove where at its mouth it is narrower than the upland, or, rather, where the circular line of the upland is greater than a line across the mouth of the cove.

It is urged that a brook which formerly entered the old channel of the river near the bend must be regarded as the present boundary of the plaintiff's land, or, at least, that he cannot go beyond it; and the counsel refer to the case of *Sparhawk & Wife* v. *Bullard,* 1 Met. 97. In that case the inquiry was to the extent of the defendant's title to flats, under the ordinance of 1641, which gave to the owner of the upland the flats to low water mark, provided the tide did not ebb more than one hundred rods; and it was held that if there was a creek from which the tide did not ebb, when, from natural causes, it ebbed the lowest, this would constitute the boundary of the flats,—the object of the ordinance being to give to the proprietors of the upland wharf privileges extending to low water mark. Of course such creek was not regarded as the boundary between individual land-owners, but the general boundary of the flats, and has no bearing upon the question before us. In respect to the brook here, it does not appear that it constituted the boundary between the plaintiff's and the defendant's land. If it did, another question might arise, upon which we do not feel called upon to enter. The brook originally entered the river on the defendant's land. As before suggested, the parties owned the soil constituting the bed of the river, in front of their lands, to its thread ; and as the river receded by degrees, it still constituted their boundary, and their title was extended to the thread of the stream in its new bed. Consequently, the alluvial deposits formed upon these flats or bed of the river became the property of these riparian owners, to be divided between them according to the rules established in such cases. It should be observed,

also, that it is immaterial whether this alluvion forms upon or against the shore, so as to cause an extension of the bank towards the river, or whether it forms in the bed of the river and becomes an island. In the latter case, such island will be divided between the proprietors of the opposite sides of the river according to the thread of the river, subject, however, it may be, to be changed by a change in the river bed.

These views go upon the assumption that these riparian owners go to the thread of the river. They of course would not be applicable if the plaintiff were bounded by a brook or other monument short of the bank, and not by the river itself.

It is urged that the true rule is to go from the old corner to the river at the nearest point, which, in some instances, would not only give the riparian owner no part of the alluvion against his own land, but, in fact, deprive him of some of the land, that is, the river bed he had before owned.

This we cannot subscribe to, even if some authority is found to support it, as in the case of *Newton* v. *Eddy*, 23 Vt. 319, which gives no satisfactory reason for the decision,—from which REDFIELD dissented, and gave reasons much more satisfactory for his views. Upon principle as well as authority, we are fully satisfied that the rule we have laid down is, in general, the sound and equitable rule, and will do justice to the parties. There can be nothing clearer, as a principle of justice, than that the riparian owner is entitled to the alluvial deposits formed against his own land by imperceptible degrees. If the alluvion is formed so that on account of a bend in the river it would be against or on the land of two proprietors, it should be fairly and equitably divided between the two owners, and not by any arbitrary rule given all to one. This equitable division will, in general, be accomplished by the rule we have stated. It would require a great weight of authority to establish the contrary rule, and such weight of authority we do not find.

A commissioner should be appointed, then, unless other facts are to be shown, to make a survey and measurement in accordance with these suggestions, and to furnish an accurate plan of the survey, as in *Sparhawk & Wife* v. *Bullard*, 1 Met. 108.

It should be observed that the rule we have suggested may in some cases require some modification ; but, so far as the case is now disclosed to us, we think it will do justice to the parties.

*Case discharged.*