## EMERSON *vs.* TAYLOR.

The mode of ascertaining the side lines of water lots, from the upland to low-water-mark, under the Colonial Ordinance of 1641, where they have not been otherwise settled by the parties, is, to draw a base line from one corner of each lot to the other, at the margin of the upland, and run a line from each of these corners, at right angles with such base line, to low-water-mark. . If the line of the shore is straight, the side lines of the lots, thus drawn to low-water-mark, will be identical ; but if by reason of the curvature of the shore, they either diverge from, or conflict with, each other, . the land inclosed by both lines, or excluded, as the case may be, is to be equally divided between the adjoining proprietors.

In this case, which was an action of trespass *quare clausum fregit*, the only question was, in what manner the side lines of the lots of land fronting on tide waters, were to be extended from the upland to low-water-mark, under the Colonial Ordinance of 1641. The facts being agreed, it was submitted in vacation, without argument, by *Gilman* for the plaintiff, and *Abbot* for the defendant.

The opinion of the Court was delivered at this term by

MELLEN C. J.

By the plan, which is made a part of the case, it appears that the upland part of the *locus in quo*, described in the second count, (a *nolle prosequi* having been entered as to the first count) is boun-

Emerson v. Taylor.

ded on the south easterly side by a lot of the defendant's; and that the course of the side lines of both lots is northeasterly to *Kenduskeag* stream, and making an angle with the same of nearly forty-five degrees. The margin of the stream is straight where the upland of the lots adjoins it. The question submitted is, in what direction the side lines of the plaintiff's flats are to run from the termination of the side lines of the upland. The flats in controversy where the alleged trespass was committed, are claimed by both parties; each claiming them as appurtenant to his upland lot, in virtue of the Colonial Ordinance of 1641, or rather of the principle of that ordinance, as a part of our common law. The language of the ordinance is "that in all creeks, coves and other places above and upon salt water, where the sea ebbs and flows, the proprietor of the land adjoining shall have propriety to the low-water-mark, where the sea doth not ebb above a hundred rods, and not more, wheresoever it ebbs further." The above expression " to the low-water-mark" seems evidently to imply to the low-water-mark in the nearest direction and without any regard to the course of the side lines of the upland to which the flats are adjoining and appurtenant; and the court appear to have adopted this principle in the case of *Rust v. The Boston Mill Corporation*, 6 *Pick.* 158, to which our attention has been called. Such a construction seems more consistent than any other with the respective rights of contiguous owners of upland; and in some cases, where the upland adjoins a cove, and the contiguous lots are so laid out or bounded, as that their side lines strike the cove, as some of them necessarily must, obliquely, the above rule must be applied as the general rule of construction; otherwise the extension of the side lines of one of the upland lots in a straight direction, might, in some cases, deprive an adjoining lot of all benefit of flats; and, according to the following plan marked A, it would cut off from lot No. 6 most of the benefits of the flats adjoining it.

*2 Dane's Abr. 693-4* [handwritten marginal note]

    After a careful examination of the subject, we perceive but one construction, or application of the principle of the ordinance which will do justice to all concerned. The mode of apylying the principle is this. Draw a base line from the two corners of each lot, where they strike the shore; and from those two corners, extend parallel lines to low-water-mark, at right angles with the base

line. If the line of the shore be straight, as in the case before us, there will be no interference in running the parallel lines. If the flats lie in a cove, of a regular or irregular curvature, there will be an interference in running such lines, and the loss occasioned by it must be equally borne or gain enjoyed equally by the contiguous owners, as appears by the following plan, marked **B.**

By the foregoing plan it will be noticed, that the parallel lines, running at right angles with the base lines are merely dotted ; while the base lines and the true division lines between the flats belonging to the respective upland lots are distinctly drawn. It will also be seen that each of the lots 1, 2, 5, 6, have their appurtenant flats converging from the upland to low-water-mark, in consequence of the recess and curvature of its margin ; while the lots 3 and 4 have their appurtenant flats wider at low-water-mark than where they join the upland, in consequence of the projection of each lot into the stream. On the same principle where there is an extended projection of upland of any form, or an island, belonging to different owners, each one's lot being bounded on the sea, or the tide water in which the island is situated, the surplus width of the flats at low-water-mark, arising from the form of the upland, must be divided among the contiguous owners of such upland, and the mode of division and the result are to be ascertained by drawing base and parallel lines in the manner before mentioned, and then making an equal division of the surplus. By this process justice will be done and all interference of lines and titles prevented.

We are not aware of any cases, where, in apportioning appurtenant flats among contiguous owners of upland, the foregoing principles and mode of proceeding would not be properly applicable as the rule of decision. Still we do not undertake to affirm that there may not be some peculiarity in the form of the upland to which flats are appurtenant, and some peculiarity of manner in which the upland may be divided among contiguous owners, the effect of which we have not anticipated, which would vary the principle. Should any such cases hereafter present themselves, requiring the application of a different principle, such new principle must of course be applied.

We have said that such is the true construction as to the effect of the principle of the ordinance and such the mode of its application, in ascertaining the extent and form of the flats adjoining the upland of different owners, holding the same in severalty. We do not mean to be understood as deciding that where a township or other tract of land belongs to one or more proprietors, to which flats are appurtenant by virtue of the principle of the ordinance, such proprietor or proprietors may not lawfully sell and convey the upland and the adjoining flats by such courses and monuments and in such form and to such extent as he or they may think proper. This may undoubtedly be done; or the flats may be conveyed in any form or by any courses without the upland. Our decision is to be considered as applying to those cases, and to those only, where the rights of contiguous owners of the flats depend on the principle of the Colonial Ordinance, as is the fact in the case under consideration. The result of our examination is the opinion that the action is maintained. Accordingly a default must be entered, and

*Judgment for plaintiff.*