[No. A105981. First Dist., Div. Two. Dec. 30, 2009.]

JOHN T. KENDALL, as Trustee in Bankruptcy, etc., et al., Plaintiffs and Respondents, v.
PAULL C. WALKER et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

<sup>\*</sup>Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion, as modified herein, is certified for publication with the exception of parts I., II., III.A.1. and III.B.

## Counsel

Miller, Starr & Regalia, Scott A. Sommer and Lewis J. Soffer for Defendants and Appellants.

Law Office of David R. Fischer and David Randall Fischer for Plaintiffs and Respondents.

## Opinion

**KLINE, P. J.**—Paull C. Walker and Margery F. Walker (collectively defendants) appeal after the trial court granted Alvin H. Luckenbach and Maria E. Luckenbach's (collectively plaintiffs)[1] motion for summary judgment. On appeal, defendants challenge the trial court's (1) denial of their motions for leave to amend and supplement their answer and cross-complaint, and (2) grant of plaintiffs' motions for summary adjudication of issues and summary judgment. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs own a residential subdivision lot (lot 102) in the town of Bethel Island, California. Defendants own the residential subdivision parcel (comprised of lot 103 and a small portion of lot 104), adjacent to plaintiffs' lot. Both lots have frontage on Taylor Slough, a navigable waterway. This matter involves the question of the proper boundary line between the parties' areas of littoral rights[2] for use of the water adjacent to their upland property.

On September 29, 1998, plaintiffs filed a complaint for damages for trespass to real property and for a temporary restraining order, preliminary injunction, and permanent injunction. The complaint alleged that a houseboat moored to defendants' dock extended onto plaintiffs' property.

---

[1] Pursuant to our order of June 19, 2009, John T. Kendall, as Trustee in Bankruptcy, etc., has substituted for the late Alvin H. Luckenbach as a respondent in this appeal. Any reference in this opinion to "plaintiffs" shall refer interchangeably to the bankruptcy trustee, Alvin Luckenbach, and Maria Luckenbach.

[2] Littoral rights are water rights adjacent to an owner's upland property. (See *Marks v. Whitney* (1971) 6 Cal.3d 251, 262 [98 Cal.Rptr. 790, 491 P.2d 374].)

On August 26, 1999, plaintiffs filed a first amended complaint, in which they added Victor and Alicia Levchenko, plaintiffs' neighbors to the south and owners of lot 101, as defendants, so that in the event correction of an alleged survey error altered the dividing line between the properties of plaintiffs and the Walker defendants, the dividing line between plaintiffs and the Levchenkos would also be changed.[3] In addition to the cause of action for trespass, the first amended complaint also added causes of action for declaratory relief regarding the location of the dividing lines between the parties' littoral rights; declaratory relief acknowledging plaintiffs' paramount rights conferred by the United States Army Corps of Engineers, authorization to relocate their dock; declaratory relief stating that defendants' mooring of their houseboat partially in front of plaintiffs' parcel violated covenants, so-called "CC&Rs" (covenants, conditions, and restrictions), that encumbered their parcel; relief from nuisance due to defendants' mooring of their houseboat partially in the area of littoral rights belonging to plaintiffs; and relief from nuisance due to defendants' violation of the CC&R's.

On December 27, 2000, defendants filed a motion for summary judgment or, in the alternative, summary adjudication of issues, claiming, inter alia, that the area in question was within the area of navigable water owned by the State of California and that the parties' rights were governed under leases and permits issued by the state.

Also on December 27, 2000, plaintiffs filed a motion for summary judgment or, in the alternative, summary adjudication of issues (summary adjudication motion).[4]

On January 29, 2001, the trial court issued its tentative ruling denying defendants' motion for summary judgment and granting plaintiffs' request for summary adjudication on all but one cause of action.

Also on January 29, 2001, defendants filed a cross-complaint to quiet title to the disputed portion of Taylor Slough, pursuant to a lease they had obtained from the State Lands Commission (Commission) on August 12, 1991. Then, on January 30, 2001, defendants requested and the trial court granted a continuance for discovery, which the court ordered reopened "only with regard to the State Lands Comm[ission]."

---

[3] The Levchenkos then filed a cross-complaint against plaintiffs, but plaintiffs later settled with the Levchenkos, with the stipulation that if defendants prevail on this appeal, that settlement is null and void.

[4] Plaintiffs had previously filed a motion for summary judgment, which was denied on July 29, 1999, and a motion for summary adjudication of issues, which was vacated at plaintiffs' request on September 26, 2000.

On May 18, 2001, the Commission submitted a letter brief to the trial court, in which it stated that it had used the "Colonial Method" to determine the sideline property projections on the curved shoreline. Using that method, the Commission concluded "it is apparent that the Walkers' houseboat does extend over the sideline so determined. And drawing the Luckenbach-Walker sideline in this manner demonstrates that the Walkers will have more than sufficient shoreline to support the houseboat and pier if the structures are relocated upstream." In light of this determination, the Commission indicated that it would not be renewing defendants' lease, which would be up for renewal in August 2001, as to the area beyond their sideline.

On October 5, 2001, defendants served notice that they were dropping their summary judgment motion on the grounds that (1) their lease had expired, (2) they had learned that the state may not own the submerged land, and (3) upon discovery that certain facts in the parties' joint stipulation of facts were not true.

On February 5, 2002, over one year after the first hearing on plaintiffs' summary adjudication motion, the trial court held another hearing on plaintiffs' motion and took the matter under submission.

On February 8, 2002, defendants filed a motion seeking leave to amend their answer and cross-complaint. In their motion, defendants stated: "The amended pleadings are designed to take into account facts uncovered in October 2001 as to the ownership of the subject portion of Taylor Slough." In particular, the motion asserted that "it has become apparent that the area of the current configuration of Taylor Slough at issue in this action is not a part of the original portion of Taylor Slough that existed, circa 1850, when California received title to submerged lands upon achieving statehood." Based on these facts, defendants' proposed amendments would add defenses and causes of action for adverse possession and a prescriptive easement.[5]

On March 26, 2002, the trial court denied defendants' motion to amend.

On May 4, 2002, the trial court filed an informal ruling—followed by an order on February 3, 2003—granting in part plaintiffs' summary adjudication motion. In its order, the trial court granted summary adjudication as to all causes of action except for the third cause of action for declaratory relief regarding defendants' violation of the CC&R's.

---

[5] Defendants also attempted to add a cause of action for "Agreed Boundary Line," under which they claimed that the predecessor in title to defendants' and plaintiffs' properties intended to convey the disputed area to defendants.

On March 4, 2003, plaintiffs filed a final motion for summary adjudication of issues or, in the alternative, summary judgment. In that motion, plaintiffs requested summary judgment as to defendants' cross-complaint, asserting that no issues raised in the cross-complaint remained unresolved. Plaintiffs also offered to have the trial court dismiss the third cause of action in their first amended complaint, in order to completely resolve the case.

On May 5, 2003, defendants filed a motion seeking leave to file a supplemental answer and cross-complaint to allege that the submerged land was not owned by the state and to assert causes of action for a prescriptive easement and adverse possession.

On July 14, 2003, the trial court entered an order denying defendants' motion to supplement their answer and cross-complaint.

On September 19, 2003, the trial court granted plaintiffs' motion for summary judgment and entered judgment thereon. On February 17, 2004, plaintiffs filed a notice of entry of judgment.

On March 11, 2004, defendants filed a notice of appeal.

On November 8, 2005, this court ordered that all proceedings in this appeal be stayed, in light of bankruptcy proceedings initiated by Alvin H. Luckenbach on October 12, 2005. On March 10, 2008, plaintiffs advised the court that the United States Bankruptcy Court, Northern District of California, had filed an order lifting the stay as to this appeal. On June 19, 2009, we therefore ordered that the stay previously imposed be lifted, and this appeal was restored to active status. We also granted plaintiffs' motion to substitute John T. Kendall, United States Bankruptcy Trustee, etc., as respondent, in place of Alvin H. Luckenbach.[6]

## DISCUSSION

## I., II.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III.   Trial Court's Grant of Plaintiffs' Motions for Summary Adjudication and Summary Judgment

Defendants contend the trial court improperly granted plaintiffs' summary adjudication and summary judgment motions because there were several triable issues of material fact that precluded the granting of these motions.

---

[6] Alvin H. Luckenbach died on December 7, 2006.

[*] See footnote, *ante*, page 584.

A motion for summary adjudication or summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "In moving for summary judgment, a 'plaintiff . . . has met' his 'burden of showing that there is no defense to a cause of action if' he 'has proved each element of the cause of action entitling' him 'to judgment on that cause of action. Once the plaintiff . . . has met that burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The defendant . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' (Code Civ. Proc., § 437c, subd. (*o*)(1).)" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

We review rulings on motions for summary adjudication and summary judgment de novo. (*Marie Y. v. General Star Indemnity Co.* (2003) 110 Cal.App.4th 928, 949 [2 Cal.Rptr.3d 135].)

## A. *Grant of Summary Adjudication of Issues*

On February 3, 2003, the trial court filed an order granting plaintiffs' summary adjudication motion, on all except the third cause of action (for declaratory relief regarding defendants' violation of the CC&R's).

The trial court (Hon. Richard S. Flier) granted summary adjudication of the first cause of action in plaintiffs' first amended complaint, "Declaratory Relief Re: Location of Littoral Rights," declaring "that the location of the boundary separating the Luckenbach littoral rights from the Walker littoral rights is 'LINE "B" ' as depicted upon the survey map [attached to the order as exhibit A]." (A copy of the survey map is attached as appendix A at the end of this opinion.) The court found "[t]here is no disputed issue of fact with respect to the boundary, but only questions of law, which are resolved in plaintiffs' favor in accordance with applicable authority. ([See *Fraser's etc. P. Co. v. Ocean Park P. Co.* (1921) 185 Cal. 464, 472–473 [198 P. 212] (*Fraser's*); *Marks v. Whitney, supra,* 6 Cal.3d 251, 256, 262–263].) The boundary line is not determined by any projection or extension of the upland property lines into the water. Rather, it is determined by a line drawn into the water which is perpendicular to the shore line, that is, to the general course of

the shore at that point. The location of the boundary line is also consistent with the State Lands Commission's 'Colonial Method' of determining boundaries for leasable water areas. (See State Lands Commission's letter brief filed on May 18, 2001.)"

The trial court granted summary adjudication of plaintiffs' second cause of action, "Declaratory Relief Re: Paramount Rights Conferred by Army Authorization," declaring "that: (a) plaintiffs are authorized to construct a dock upon a portion of the area occupied by the WALKER houseboat, by virtue of a written authorization letter from the United States Department of the Army, Corps of Engineers, and that defendants WALKER have no rights in that area which are paramount to such authorization; and (b) the aforesaid authorization from the United States Department of the Army, Corps of Engineers, confers upon the plaintiffs the right to construct a dock, which right is paramount to any alleged rights of anyone else to moor a boat in the same location. [¶] Plaintiffs have federal authority to relocate their dock in an area which is encroached upon by defendants' houseboat."

The trial court also granted summary adjudication of plaintiffs' fourth cause of action, "Relief from Nuisance due to Encroachment on Littoral Rights." The court ordered that "a permanent injunction shall be issued enjoining defendants WALKER from in any way encroaching upon the littoral rights belonging to the plaintiffs, including an encroachment by mooring a boat (such as a houseboat) within any part of plaintiffs' littoral rights."[18]

The trial court granted summary adjudication of the plaintiffs' fifth cause of action, "Relief from Nuisance due to Violation of CC&Rs," ordering that "a permanent injunction shall be issued enjoining defendants WALKER from in any way mooring a houseboat, or other type of floating residence, at the structure referred to in U.S. Army Corps of Engineers permit No. 5118. . . . [¶] The houseboat is a floating residence, and thus violates the CC&Rs. Defendants have failed to show that plaintiffs do not have standing or the right to enforce the CC&Rs. [Citation.]"

Finally, the trial court granted summary adjudication of the plaintiffs' sixth cause of action, "Relief for Trespass to Littoral Rights," and ordered that "a permanent injunction shall be issued enjoining defendants WALKER from in any way encroaching upon the littoral rights belonging to the plaintiffs,

---

[18] Plaintiffs agreed to the dismissal of their damage claims related to the fourth cause of action, in order to allow summary adjudication of that cause of action.

including an encroachment by mooring a boat (such as a houseboat) within any part of plaintiffs' littoral rights."[19]

### 1. *Waiver of Second and Fifth Causes of Action**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 2. *Applicable Law Regarding Littoral Rights*

■ The California Supreme Court has explained the rights of an upland property owner with respect to littoral rights: "A littoral owner has a right in the foreshore adjacent to his property separate and distinct from that of the general public [citation]. This is a property right and is valuable, and although it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed. [Citation.] A littoral owner can enjoin as a nuisance interference by a private person with this right. [Citation.] A littoral owner has been held to have the right to build a pier out to the line of navigability; a right to accretion; a right to navigation (the latter right being held in common with the general public) [citations]; and a right of access from every part of his frontage across the foreshore [citation]. This right of access extends to ordinary low tide both when the tide is in and when the tide is out. [Citation.]" (*Marks v. Whitney, supra,* 6 Cal.3d at pp. 262–263, fn. omitted.)

Moreover, it is owners of land abutting on "the waterfront line who, under legal sanction, may . . . build into the deeper public waters beyond." (*Shirley v. City of Benicia* (1897) 118 Cal. 344, 346 [50 P. 404].) Erection of a private wharf that would preclude upland owners from building a wharf on part of their waterfront constitutes a nuisance in the navigable waters of the state, which the upland owner may have abated. (*Shirley v. Bishop* (1885) 67 Cal. 543, 546 [8 P. 82]; 63 Cal.Jur.3d (2005) Water, § 774, p. 128.)

In *Fraser's etc. P. Co. v. Ocean Park P. Co., supra,* 185 Cal. 464 (*Fraser's*), our Supreme Court discussed the proper line of division between adjoining littoral landowners. *Fraser's* was concerned with the boundaries of a city over the waters of the ocean and whether a pier built out into the ocean by a private owner was fully within the jurisdictional limits of the City of Santa Monica or partly within the limits of the City of Venice, for purposes of determining the proper tax assessments against the cities. (*Id.* at p. 471.)

■ The Supreme Court in *Fraser's* corrected the parties' misunderstanding of the method of determining the littoral boundary: "All the parties

---

[19] Plaintiffs agreed to the dismissal of their damage claims related to the sixth cause of action, in order to allow summary adjudication of that cause of action.

* See footnote, *ante,* page 584.

appear to have assumed that the division line which marked the jurisdiction of the respective cities over the water beyond high-tide line would be the line of the boundary extended into the water. It appears that this line is not perpendicular to the shore line at that point, but strikes it at an angle, less than ninety degrees on the Venice side and more than ninety degrees on the Santa Monica side. Under the law applicable to such matters it is not true that the rights of adjoining owners of land bordering upon tide water, or upon a navigable lake or stream, in the land under the water upon which both tracts abut are to be ascertained by extending the line of the boundary between them in its original direction into the water, to the center thereof in the case of a stream, or indefinitely in the case of the ocean. On the contrary, the rule is that the area over which such rights as each proprietor may have in the land under the water upon which his tract abuts, and to the use of the water covering the same, is not fixed by extending his boundary line into the water in the direction of the last course ending at the shore line, but is fixed by a line drawn into the water perpendicular to the shore line; that is, to the general course of the shore line at that point. Unless extraordinary conditions occur, this is the rule to be applied in defining the respective rights of such owners to the space in front, under, upon, and in the water. If accretions occur in front of the land the boundary line between them as to such accretions is a line extending into the water perpendicular to the original shore line in its general course and not by the line of the boundary extended in its original direction. If this were not the case it will be seen that where the boundary strikes the shore line at an acute angle the rights of one proprietor would extend in front of the land of the other so as to practically cut him off from the use of the water. The authorities are all to the effect that this is not the case. [Citations.]" (*Fraser's, supra,* 185 Cal. at pp. 472–473.)

The court then noted that the same general rule applied to the boundaries of municipal jurisdictions over the waters of the ocean, and that the line dividing the jurisdictions of Santa Monica and Venice over the ocean "is a line drawn from the intersection of that boundary with the shore line into the ocean in a direction perpendicular to the general course of the shore line at that place. If the shore line is circular it will be perpendicular to a tangent drawn on the circle at the point of such intersection." (*Fraser's, supra,* 185 Cal. at p. 473.)[21]

---

[21] In a brief subsequent opinion, the court stated that its discussion in its opinion regarding the direction of the extension of boundary lines into water was wholly based on the facts in the record, and that, because the charter in connection with sections of the former Political Code defining county boundaries left it difficult to determine whether the boundaries in fact extend into the ocean, the court withheld any expression of opinion on that subject. (*Fraser's, supra,* 185 Cal. at p. 474.)

Also, in the very early case of *Emerson v. Taylor* (1832) 9 Me. 42, 44–45, the Supreme Court of Maine discussed the so-called Colonial Method for determining the littoral boundary on a shoreline that is not straight. The court explained: "The mode of applying the principle is

■ Later, in *Swarzwald v. Cooley* (1934) 220 Cal. 438, 443 [31 P.2d 381] (*Swarzwald*), our Supreme Court stated that it interpreted *Fraser's* "as setting forth the general rule of the common law by which accretions are to be subdivided." The *Swarzwald* court noted there are exceptions to the rule under certain circumstances. " 'For instance, in applying the rule to the ancient margin of the river, to ascertain the extent of each proprietor's title on that margin, the general line ought to be taken, and not the actual length of the line on that margin if it happens to be elongated by deep indentations or sharp projections. In such case, it should be reduced by an equitable and judicious estimate, to the general available line of the land upon the river.' " (*Id.* at p. 444.)

■ The court further stated: "There is nothing in the case of *Fraser's* . . . at variance with these principles or with the exceptions noted to the general rule. By use of the phrases 'at that point' and 'at that place' the court did not mean to limit its other pronouncement defining the original line as the 'general course' of the 'original shore line.' One point will not determine a line nor two points an arc. At least three points are necessary to describe an arc. What is meant by the original general shore line is the general course of the line marking the margin of the properties as a whole and it is altogether possible that to determine it in some cases it would be necessary to consider points in the shore line nearby the particular margin in question." (*Swarzwald, supra,* 220 Cal. at p. 445.)

### 3. *Analysis*

The shoreline in this case, as shown on the 1944 subdivision map utilized by the court and the parties, comes to a point where the dividing line between the properties meets the shore, and then angles slightly up from that point on both sides, which plaintiffs describe as looking something like the bottom of a stop sign. Plaintiffs' surveyor, Ronald C. Greenwell, made three boundary measurements on the map. Line A is a line perpendicular to defendants' shoreline boundary; line C is a line perpendicular to plaintiffs' shoreline boundary. These lines make a "V" out from the dividing line at the shore. Line B, which the trial court found to be the proper line dividing the parties' areas of littoral rights, comes out from the base of the "V" and is "the mathematical equal split" of lines A and C. (See appendix A.)

this. Draw a base line from the two corners of each lot, where they strike the shore; and from these two corners, extend parallel lines to low-water-mark, at right angles with the base line. If the line of the shore be straight, as in the case before us, there will be no interference in running the parallel lines. If the flats lie in a cove, of a regular or irregular curvature, there will be an interference in running such lines, and the loss occasioned by it must be equally borne or gain enjoyed equally by the contiguous owners . . . ."

Defendants argue that summary adjudication on the first cause of action, regarding the boundary dividing the parties' areas of littoral rights, was improper because there was a factual dispute as to the location of the original shoreline. According to defendants, the *Fraser's* rule requires a determination of the shoreline at the time California became a state in 1850. However, because the shoreline map used to determine the boundary line was a 1944 subdivision map and because both the Commission and defendants' expert, Roy Minnick, questioned whether dredging and other activities over the years had changed the location of Taylor Slough, defendants claim there has been no determination of the original shoreline in this case, as required by *Fraser's*. Defendants also claim that, under *Swarzwald*, it was necessary to make an equitable determination of the boundary, and that such a determination is not compatible with summary adjudication. They further claim that the mathematical formula utilized to arrive at "line B" as the dividing line was flawed.

■ Defendants failed to raise these issues either in their opposition to plaintiffs' summary adjudication motion or in their response to plaintiffs' separate statement of undisputed facts. In their response to plaintiffs' separate statement, defendants' sole challenge to the survey method or map used by plaintiffs' land surveyor, was an objection that the term "shoreline" was "ambiguous in that it could mean the ordinary high water line, the ordinary low water line, or other points. The Exhibit prepared by Greenwell [plaintiffs' surveyor] does not identify the high water mark, low water mark, tidal zone or submerged lands."

Defendants did not challenge the results of plaintiffs' survey until they raised the issue in their opposition to plaintiffs' subsequent summary judgment motion, by which time the littoral rights issues to which the map of the shoreline and mathematical formula pertained had already been adjudicated. Accordingly, defendants have waived these issues on appeal. (See *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 640 [134 Cal.Rptr.2d 273] [appellate court "will consider only those facts that were before the trial court [i.e., contained in parties' separate statements] when it ruled on the motion[]"].)

In any event, even were we to address defendants' claims regarding determination of the original shoreline and the proper dividing line of the parties' areas of littoral rights, we would find them to be without merit.

First, with respect to the alleged failure to determine the course of the original shoreline, *Swarzwald* explained the term "ancient shore line" discussed in *Fraser's*: "What is meant by the original general shore line is the general course of the line marking the margin of the properties as a whole." (*Swarzwald, supra*, 220 Cal. at p. 445.) Thus, the question is not what the

shoreline looked like at the earliest possible date. Rather, it is what the general course of the shoreline is "if [the actual shoreline] happens to be elongated by deep indentations or sharp projections." (*Id.* at p. 444.)

In the present case, defendants presented no evidence that the general course of the shoreline was not that depicted in the 1944 subdivision map used to determine the littoral boundary between the properties. Thus, there was no material factual dispute on this point.

Second, regarding defendants' claim that *Swarzwald* sets forth the rule that any determination of littoral boundaries requires an equitable determination, on the contrary, *Swarzwald* states an *exception* to the general rule set forth in *Fraser's*, and holds that an equitable determination is required only when "deep indentations or sharp projections" distort the shoreline such that the general rule of *Fraser's* cannot equitably be utilized in determining the boundaries. (*Swarzwald, supra,* 220 Cal. at pp. 443–444.)

In this case, while there is a slight angle in the shoreline where the parties' property line meets the shore, that angle is not equivalent to the dramatic indentations or projections described in *Swarzwald* that required equitable consideration to avoid an unjust result. Hence, *Fraser's* general rule applies, just as it does when the shoreline is circular, and the trial court properly determined the littoral boundaries in this case using that method. (See also *Emerson v. Taylor, supra,* 9 Me. 42, 44–45 [discussing Colonial Method, which was used in this case by the Commission to arrive at same result reached by trial court].)[22]

Finally, defendants contend their adverse possession and prescriptive rights claims raised a triable issue of material fact—whether the state did or did not own the land—requiring denial of plaintiffs' summary adjudication motion,

---

[22] In their opening brief, defendants state that the parties' docks have been built across the foreshore to the line of navigability. In their reply brief, they assert, without citation to the record, that "[i]t is common knowledge throughout the proceedings" that the docks are dozens of feet beyond the line of navigability, and that littoral rights do not apply past the line of navigability. Defendants have waived this issue both by failing to articulate it in their opening brief and failing to cite to the record to support the assertion in their reply brief. Moreover, as previously noted, upland owners of waterfront land, "under legal sanction, may . . . build into the deeper public waters beyond." (*Shirley v. City of Benicia, supra,* 118 Cal. at p. 346.)

Defendants also cite *Woods v. Johnson* (1966) 241 Cal.App.2d 278 [50 Cal.Rptr. 515], for the proposition that plaintiffs are not entitled to an injunction against the mooring of defendants' houseboat, absent a factual showing and weighing of evidence to determine "whether the few feet on [plaintiffs'] side of the 'boundary' occupied by [defendants'] boat were *necessary* to [plaintiffs'] 'reasonable access' to navigable water." *Woods v. Johnson,* however, is plainly distinguishable from the present case in that, there, "[a]dmittedly, respondents' fill does not encroach on lands of appellants, nor does it lie upon land directly lakeward to appellants' property." (*Id.* at p. 280.)

despite the fact that the trial court did not permit them to file amended or supplemental pleadings. We disagree.

■ "[S]ummary judgment cannot be denied on a ground not raised by the pleadings. [Citation.]" (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663 [42 Cal.Rptr.2d 669], italics omitted.) In particular, as relevant here, "[a] party claiming the right to use water by adverse possession for the statutory time must set up the same as a defense in his answer. [Citation.]" (*Lux v. Haggin* (1886) 69 Cal. 255, 267 [10 P. 674]; accord, *Warden v. Bailey* (1933) 133 Cal.App. 383, 388–389 [24 P.2d 192].) Thus, defendants were precluded from raising claims of adverse possession and prescriptive rights when they did not raise these issues in their answer or cross-complaint.[23]

In conclusion, the trial court properly granted summary adjudication of issues on the first, fourth and sixth causes of actions in plaintiffs' first amended complaint related to plaintiffs' littoral rights.

## B. *Grant of Summary Judgment**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[23] We further observe that defendants' allegations regarding state nonownership of the submerged land were based on speculation. For example, in their response to plaintiffs' separate statement of material facts, they disputed that plaintiffs' and defendants' parcels have frontage on Taylor Slough, stating, "It appears that the area owned by the State is partially or completely outside of the area of [defendants'] dock and houseboat," and cited as a material fact that "[t]he State of California may not own the area of [defendants'] dock and houseboat and it may be private land adversely possessed by [defendants]." In support of these propositions, defendants cited the declarations of their expert, Roy Minnick ("Based on my work to date, it is my preliminary opinion that the original location of Taylor Slough as of 1850 is closer to the opposite shore from the Walker property. If this preliminary analysis is confirmed by further work, it will mean that the State of California does not own fee title to the area currently under water adjacent to the Walker property . . ."), their counsel ("It is my expectation that admissible evidence may exist and be forthcoming that will establish that some or all of the area in dispute is private land, as to which [defendants] will have title by adverse possession, or at least an easement by prescription for the statutory period"), and exhibit C to the declaration of Margery F. Walker (Aug. 9, 2001 letter from Commission stating that "not all property owners need obtain a lease from the State Lands Commission to place a dock on a waterway. This is due to the fact that the State does not own the beds of all of the rivers and sloughs and it may issue leases only on those lands it does own"). These unsupported allegations do not rise to the level of "substantial responsive evidence sufficient to establish a triable issue of material fact," as is necessary to defeat a motion for summary judgment or summary adjudication of issues. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162–163 [80 Cal.Rptr.2d 66].)

*See footnote, *ante*, page 584.

## *DISPOSITION*

The judgment is affirmed. Plaintiffs are entitled to their costs on appeal.

Lambden, J., and Richman, J., concurred.

A petition for a rehearing was denied January 27, 2010, and the opinion was modified to read as printed above.

Exhibit showing existing boundary location between Luckenbach & Walker (portion of 27 M 14), Contra Costa County, California.