Filed 6/24/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| JAMES MOSLEY et al., | |
| Plaintiffs and Appellants, | E071287 |
| v. | (Super.Ct.No. RIC1615549) |
| PACIFIC SPECIALTY INSURANCE COMPANY, | **ORDER MODIFYING OPINION AND DENYING PETITIONS FOR REHEARING** [NO CHANGE IN JUDGMENT] |
| Defendant and Respondent. | |

THE COURT:

The petitions for rehearing are denied. The opinion filed in this matter on May 25, 2020, is modified to read as follows:

On page 3, the first sentence is modified by deleting the word "judgment" and should read as follows:

We also affirm the trial court's order denying the Mosleys' motion for summary adjudication on the issue of whether PSIC properly denied coverage.

On page 3, the first full paragraph, second sentence is modified by deleting the words "Both of the," so that the sentence reads as follows:

James Mosley was named as the insured. . . .

1

On page 4 and ending on page 5, the last paragraph is modified by deleting the word "judgment" and should read as follows:

In their opening brief, the Mosleys state they also appealed from the trial court's denial of their motion for summary adjudication. PSIC contends the Mosleys may not do so because they did not indicate they intended to appeal the denial of their motion for summary adjudication in their notice of appeal.

On page 5, the citation "see also *Lytwyn v. Fry's Electronics, Inc.* (2005) 126 Cal.App.4th 1455, 1469 ["[A] notice of appeal from an appealable order need not specify prior nonappealable rulings."]," is deleted.

On page 5 paragraph 2, the last sentence is modified by deleting the word "judgment" and should read as follows:

We therefore address the trial court's order granting PSIC's motion for summary judgment and its order denying the Mosleys' adjudication motion.

The last sentence on page 21 paragraph 2 is modified by deleting the word "judgment" and should read as follows:

We therefore reverse the trial court's order granting summary judgment to PSIC and affirm the trial court's order denying the Mosleys' motion for summary adjudication on the issue of whether PSIC properly denied coverage.

The last paragraph on page 21 should be deleted.

The Disposition on page 29, third sentence is modified by deleting the word

"judgment," and should read as follows:

The trial court's order denying the Mosleys' motion for summary adjudication

on the issue of whether PSIC properly denied coverage is otherwise affirmed. . . .

Except for these modifications, the opinion remains unchanged.  These

modifications do not effect a change in the judgment.

CERTIFIED FOR PUBLICATION

CODRINGTON
Acting P.J.

I concur:

McKINSTER
J.

I would grant PSIC's petition and deny Mosley's petition.

MENETREZ
J.

Filed 5/26/20 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| JAMES MOSLEY et al., | |
| Plaintiffs and Appellants, | E071287 |
| v. | (Super.Ct.No. RIC1615549) |
| PACIFIC SPECIALTY INSURANCE COMPANY, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Sunshine S. Sykes, Judge. Affirmed in part, reversed in part with directions.

Law Office of Michael W. Garnett, and Michael W. Garnett, for Plaintiffs and Appellants.

Shoecraft Burton, and Michelle L. Burton and Rachael K. Kelly, for Defendant and Respondent.

## I.

## INTRODUCTION

Plaintiffs and appellants, James and Maria Mosley, rented out a home they own that defendant and respondent, Pacific Specialty Insurance Company (PSIC), insured under a homeowners' policy (the Property). The Mosleys' tenant started growing marijuana in the Property. To support his marijuana-growing operation, the tenant re-routed the Property's electrical system to steal power from a main utility line. The tenant's re-routed electrical system caused a fuse to blow, which started a fire that damaged the Property. PSIC denied coverage, citing a provision in the Mosleys' policy that excluded any loss associated with "[t]he growing of plants" or the "manufacture, production, operation or processing of . . . plant materials."

The Mosleys sued PSIC for denying coverage. The trial court granted summary judgment in PSIC's favor, finding that PSIC properly denied coverage because the Mosleys had control over their tenant's conduct.

Because there is no evidence the Mosleys were aware of their tenant's marijuana growing operation, and because the record is silent as to what the Mosleys could or should have done to discover it, we reverse the judgment. We reverse the trial court's order granting PSIC summary judgment on the Mosleys' first cause of action for breach of contract, but we affirm the trial court's order granting summary adjudication on the Mosleys' second cause of action for breach of the implied covenant of good faith and fair

2

dealing. We also affirm the trial court's order denying the Mosleys' motion for summary judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Between April 2016 and April 2017, PSIC insured the Property under an HO-3 Standard Homeowners Insurance policy (the Policy). Both of the James Mosley was named as the insured. Paragraph E of the Policy provides in full: "We do not insure for loss resulting from any manufacturing, production or operation, engaged in: [¶] 1. The growing of plants; or [¶] 2. The manufacture, production, operation or processing of chemical, biological, animal or plant materials."

In February 2016, the Mosleys rented the property to Pedro Lopez. Six months later, the property was damaged by fire. It was determined that Lopez had "bootlegged" a main power line into the property's attic to power his energy-intensive marijuana growing operation. Lopez's "illegal power line . . . caused the fire."

PSIC denied coverage for the loss caused by the fire. PSIC found that the loss was excluded from coverage under Paragraph E of the Policy because it resulted from Lopez's growing marijuana.

The Mosleys sued PSIC for breach of contract and breach of the covenant of good faith and fair dealing. The parties filed cross-motions for summary judgment. The Mosleys asserted PSIC's refusal to cover the fire loss violated Insurance Code section

3

2070[1], because the Policy provides less coverage than required by section 2071.  The

Mosleys further asserted PSIC breached its obligations under the Policy by interpreting

Paragraph E to exclude coverage for the losses caused by the fire.  PSIC argued it

properly denied coverage because the Policy permissibly excluded coverage for losses

that resulted from plant growing, such as Lopez's marijuana-growing operation.  PSIC

further asserted this exclusion complied with section 2070.  Specifically, PSIC argued

section 2071 allows exclusions for liability that occur from a hazard "increased by any

means within the control or knowledge of the insured," and Lopez's conduct was within

the Mosleys control or knowledge, so the Policy provided substantially equivalent

coverage to what section 2071 requires.

The trial court denied the Mosleys' motion, granted PSIC's motion, and entered

judgment for PSIC.  The trial court found that the Policy properly excluded losses

stemming from Lopez's conduct under Paragraph E and that the Policy complied with

section 2070 by providing the Mosleys with coverage substantially equivalent to that

required by section 2071.

III.

DISCUSSION

A. *Appealability*

In their notice of appeal, the Mosleys indicated they appealed only the trial court's

"[j]udgment after an order granting a summary judgment motion."  In their opening brief,

---

[1] Unless otherwise noted, all statutory references are to the Insurance Code.

4

the Mosleys state they also appealed from the trial court's denial of their motion for summary judgment. PSIC contends the Mosley may not do so because they did not indicate they intended to appeal the denial of their motion for summary judgment in their notice of appeal.

We disagree. Because the Mosleys appealed from a final judgment, we may review any nonappealable order encompassed within the judgment, such as the trial court's denial of the Mosleys' summary judgment motion, even if not identified in the Mosleys' notice of appeal. (See *Gavin W. v. YMCA Metropolitan Los Angeles* (2003) 106 Cal.App.4th 662, 669 [notice of appeal from final judgment allows review of nonappealable order]; see also *Lytwyn v. Fry's Electronics, Inc.* (2005) 126 Cal.App.4th 1455, 1469 ["[A] notice of appeal from an appealable order need not specify prior nonappealable rulings."].) We therefore address the trial court's order granting PSIC's motion for summary judgment and its order denying the Mosleys' summary judgment motion.

B. *Summary Judgment Principles and Standard of Review*

"The trial court properly grants a motion for summary judgment 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).)" (*Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 639.) We independently review the trial court's ruling on the parties' cross-motions for summary judgment, "applying the same three-step analysis required of the trial court. [Citations.] First, we identify the

issues framed by the pleadings. . . . [¶] Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] . . . [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citations.]" (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065.) "[W]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it." (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19.)

C.  *Breach of Contract Claim*

1.  *PSIC was not entitled to summary adjudication on the Mosleys' Breach of Contract Claim*

PSIC moved for summary adjudication on the Mosleys' first claim for breach of contract on the ground that Paragraph E of the Policy excluded loss for the fire damage caused by Lopez's altering the property's electrical system to support his marijuana grow operation. The trial court agreed with PSIC's interpretation.

"The ordinary rules of contract interpretation apply to insurance contracts. [Citation.] To protect the interests of the insured, coverage provisions are interpreted broadly, and exclusions are interpreted narrowly." (*Stellar v. State Farm Gen. Ins. Co.* (2007) 157 Cal.App.4th 1498, 1503.) We read the Policy's words "'in their ordinary sense,'" and interpret the Policy de novo, giving no deference to the trial court's

6

interpretation.  (*California Casualty Ins. Co. v. Northland Ins. Co.* (1996) 48 Cal.App.4th 1682, 1691.)

"An insurer may 'seek[] summary judgment on the ground the claim is excluded,' in which case it has 'the burden . . . to prove that the claim falls within an exclusion. [Citation.]'  [Citation.]  To satisfy its burden, an insurer need not 'disprove every possible cause of the loss' and once the insurer establishes the claim is excluded, the burden shifts to the insured to show a triable issue of material fact exists."  (*Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, 1406.)  "'[A]n insured has the burden of proving its claim falls within the scope of the policy's basic coverage, even where the insurer brings a motion for summary judgment.'  [Citation.]"  (*Gonzalez v. Fire Insurance Exchange* (2015) 234 Cal.App.4th 1220, 1230.)  "Thus, when an insurer meets its initial burden on summary judgment of showing there is no coverage under the policy, the burden shifts to the insured to show a triable issue of material fact as to coverage."  (*Medina v. GEICO Indemnity Co.* (2017) 8 Cal.App.5th 251, 259-260.)

Paragraph E of the Policy excludes losses "resulting from any manufacturing, production or operation, engaged in . . . [t]he growing of plants."  It is undisputed that the fire that damaged the property "result[ed] from" Lopez's re-wiring the property's electrical system in order to power his marijuana growing operation.  But the parties dispute whether that means the damage "result[ed] from" "the growing of plants."

California courts broadly interpret the term "resulting from" in an insurance contract.  (*St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.*

7

(2002) 101 Cal.App.4th 1038, 1050; see *Acceptance Ins. Co. v. Syufy Enterprises* (1999) 69 Cal.App.4th 321, 328 [broadly interpreting "'arising out of'" in policy's exclusion]; *The Travelers Property Cas. Co. of America v. Actavis, Inc.* (2017) 16 Cal.App.5th 1026, 1045-1056 [collecting cases interpreting "'arising out of'" or "'arising from'" broadly]; *id.* at p. 1045 [interpreting "'results from'" and "'arising out of'" in the same way].)

The term "resulting from" "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." (*Fireman's Fund Ins. Cos. v. Atlantic Richfield Co.* (2001) 94 Cal.App.4th 842, 849; accord, *Vitton Construction Co., Inc. v. Pacific Ins. Co.* (2003) 110 Cal.App.4th 762, 767 [holding "a minimal causal connection will suffice to trigger coverage under an 'arising out of' clause"].) Thus, the term "resulting from" is "generally equated . . . with 'origination, growth or flow from the event.' [Citation.]" (*Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.* (2003) 106 Cal.App.4th 293, 301.) In determining whether a loss "results from" a liability-creating event, we use "common sense." (*Vitton Construction Co., Inc. v. Pacific Ins. Co.*, *supra*, 110 Cal.App.4th at p. 767.)

The undisputed evidence shows that (1) the fire was caused by Lopez's altering the property's electrical system and (2) Lopez altered the property's electrical system to power his marijuana growing operation. Thus, there was a "minimal causal connection" between Lopez's growing marijuana, the fire, and the resulting loss. (*Fireman's Fund Ins. Cos. v. Atlantic Richfield Co.*, *supra*, 94 Cal.App.4th at p. 849.) We therefore

8

conclude that the loss resulted from an operation engaged in the growing of plants, which Paragraph E excludes from coverage. (Cf. *Anh Hung Huynh v. Safeco Ins. Co. of America* (N.D. Cal. Nov. 23, 2012) 2012 WL 5893482, at *4 [holding "any reasonable insured who read [analogous provision] would understand that it excludes coverage for loss arising out of an illegal marijuana grow operation"].)

However, the Mosleys argue that, even if Paragraph E excluded loss for damages caused by Lopez's marijuana growing operation, the Policy is void because it provides less coverage than section 2070 mandates.

"Section 2070 generally requires fire policies in California to be on the standard form set forth in [Insurance Code] section 2071, but permits insurers to deviate from the form 'provided, that coverage with respect to the peril of fire, when viewed in its entirety, is substantially equivalent to or more favorable to the insured than that contained in such standard form fire insurance policy.' (§ 2070.)" (*California Fair Plan Assn. v. Garnes* (2017) 11 Cal.App.5th 1276, 1290.) Put another way, "a policy that does not conform to section 2071's standard provisions must provide total fire coverage that is at least 'substantially equivalent' to coverage provided by the standard form" in section 2071. (*Century-National Ins. Co. v. Garcia* (2011) 51 Cal.4th 564, 567.) If a policy's exclusions do not conform with section 2071, the policy is unenforceable. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 754.)

To determine whether the Policy's fire coverage is "substantially equivalent" to the coverage required by section 2071, we evaluate whether the Policy's fire coverage "is

9

at least as favorable to [the Mosleys] as the coverage provided in the standard form" outlined in section 2071.  (*Century-National Ins. Co. v. Garcia*, *supra*, 51 Cal.4th at p. 573.)  "If application of the . . . exclusion in the former results in coverage that is not at least substantially equivalent to the level of protection available in the latter, the exclusion is to that extent invalid."  (*Id.* at p. 569.)

Section 2071 provides, in relevant part, that an insurer "shall not be liable for loss occurring . . . while the hazard is increased by any means within the control or knowledge of the insured."  The trial court found that the Policy was valid and enforceable because it provided "substantially equivalent" coverage to section 2070's standard form because, like the standard form, the Policy limits coverage for hazards increased by means within the insured's control or knowledge.  The trial court thus found that PSIC was not liable for the loss caused by the fire because Lopez's marijuana grow operation, as well as the electrical alterations he made to the property, increased a hazard "'within the control or knowledge'" of the Mosleys.

PSIC asserts the trial court was correct because "there would be no coverage for [the Mosleys'] claim under the standard form policy if the marijuana growing operation increased the hazard by means within [their] control or knowledge."  PSIC implicitly concedes the Mosleys had no knowledge of Lopez's marijuana growing operation, but argues they had control over it because they "had control over what occurred in their home."  To support its position, PSIC relies exclusively on *Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 511, which PSIC correctly observes stands for the proposition

10

that landlords generally are liable in tort for dangerous conditions on their property. That may be true, but it does not necessarily follow that a landlord has "control" of a tenant's illegal conduct under section 2071 when the landlord is ignorant of that conduct.

PSIC does not cite, and we have not located, any binding California authority interpreting what constitutes a "hazard . . . increased by any means within the control . . . of the insured" under section 2071. We therefore look to "[t]he decisions of sister-state courts interpreting their versions of section 2071," which are "'particularly persuasive.'" (*Aliberti v. Allstate Ins. Co.* (1999) 74 Cal.App.4th 138, 147.) Because language like the "control or knowledge" clause contained in section 2071 is routinely part of insurance policies used throughout the country, we also look to decisions interpreting the clause as part of an insurance contract. (See *Sagar v. Farm Bureau Mut. Ins. Co.* (Iowa 2004) 680 N.W.2d 8, 12 ["As we have previously pointed out, however, '[t]he standard type of insurance policy is what is generally known as the New York type. It was first adopted in the state of New York and has been followed in Iowa and many other states since its original adoption.'"].)

In *Plaza Equities Corp. v. Aetna Cas. & Sur. Co.* (S.D.N.Y. 1974), 372 F.Supp.1325, the insured sought coverage for losses it suffered due to a construction defect. (*Id.* at p. 1327.) The insurer argued coverage was excluded under the parties' policy, which provided that the insurer was not "'liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured.'" (*Id.* at p. 1331.) The district court disagreed, reasoning that "[a]n increase of hazard occurs

only when *the insured* performs acts which are reasonably calculated to increase the risk *and* which he knows or should know will increase the risk.  The negligence or misjudgment of the insured, which caused the loss here, is insufficient." (*Ibid.*, italics added)

In *Continental Western Fire Ins. Co. v. Policy Industries, Inc.* (Minn. App. 1984) 349 N.W.2d 606, the court held the insurer properly denied coverage due to the insured's increasing a risk of hazard. (*Id.* at p. 606.)  The insured used a flammable substance, which caused a fire and damage to the insured's building. (*Ibid.*)  The insurer denied coverage, pointing to a provision in the insured's policy that stated the insured "shall not be liable for loss occurring . . . [¶] while the hazard is increased by any means within the control or knowledge of the insured," which was taken from Minnesota's section 2071 equivalent. (*Id.* at p. 607.)  The court held there was "no doubt" the insured had control over the hazard because it ordered and used the flammable substance in its business operations. (*Ibid.*)  In rejecting the insured's argument that its "'control' requires or means 'knowledge,'" the court explained that the authority the insured relied on was not applicable because the "cases involved landlord/tenant situations where the insured-landlord was not actually on the premises, and merely indicate that to be liable for an increase in hazard a landlord must actually know of the activity." (*Ibid.*; *Holtorf v. Rochester Farmers Mutual Fire Ins. Co.* (1933) 190 Minn. 44, 250 N.W. 816 (*Holtorf*); *Schaffer v. Hampton Farmers Mutual Fire Ins. Co.*, (1931) 183 Minn. 101, 235 N.W. 618 (*Schaffer*).)

In *Holtorf*, the insured owned a farm, and her son was its tenant. (*Holtorf*, *supra*, 190 Minn. at p. 45.) Without the insured's knowledge, her son stored a barrel of gasoline in the barn, which caused a fire that burned down the barn. (*Ibid.*) The insured denied coverage, citing a clause in the insured's policy that stated the insurer would not be liable "if the risk shall be increased by means which are within the control of the assured." (*Ibid.*) The *Holtorf* court rejected the insurer's position because "the factor which increased the risk (presence of gasoline in the barn) was not within [the insured's] control" (*id*. at p. 48.) because she "had no knowledge of the presence of gasoline in the barn, and did not consent to its being there." (*Id.* at p. 47.)

*Schaffer* involved a similar situation. There, the insured leased his farm to tenants who, without the insured's knowledge or permission, installed an illegal alcohol still that started a fire and damaged the insured's property. (*Schaffer*, *supra*, 183 Minn. at p. 102.) Citing the insured's policy that the insurer was not liable for risks "'increased . . . by any means whatever within the control of the assured,'" the insurer denied coverage for the fire caused by the tenant's still. (*Ibid.*) The *Schaffer* court disagreed and held that the insurer could properly deny coverage for an increased risk only if it proved that the insured knew about the distillery because, if he did, "then its existence . . . could be said to be within his control." (*Id.* at p. 106; see *Security Ins. Co. of New Haven v. Dazey* 7th Cir. 1935) 78 F.2d 537, 541 ["Bringing a quantity of kerosene into the house for the sole purpose of setting it on fire and burning it would not, in our judgment, fall within the

purview of the [hazard] clause, *unless indeed the insured knew of and co-operated in the act.*"], italics added.)

The Eighth Circuit came to the same conclusion on largely identical facts in *Patriotic Ins. Co. of America v. Franciscus* (8th Cir. 1932) 55 F.2d 844 (*Franciscus*). As in *Schaffer*, the insured in *Franciscus* rented out his property to tenants, who ran an alcohol distillery in the property that caused a fire. (*Franciscus*, *supra*, 55 F.2d at p. 846.) The insured's policy excluded losses caused by any "'hazard . . . increased by any means within the control or knowledge of the insured.'" (*Id.* at p. 846.) After a multi-jurisdiction survey, the Eighth Circuit explained that the language "by means within the control or knowledge" had been considered "in a great many cases, and the overwhelming weight of authority is that the landlord is not an insurer against the introduction of increased hazard, but that his liability depends upon his knowledge, or upon circumstances which, by the exercise of ordinary care and diligence, would result in such knowledge. [Citations.]" (*Id.* at p. 847; see *Procacci v. U.S. Fire Ins. Co.* (App. Div. 1937) 118 N.J.L. 423, 424-425 ["We take it[,] therefore[,] that the policy was not invalidated in any event by the increase in hazard, due to the operation of a still, when the record is innocent of proof that the owner had knowledge of this condition that increased the hazard, or, by the exercise of ordinary care and diligence, was chargeable with such knowledge."].) The *Franciscus* court held that whether the insured should have discovered the tenant's still under the circumstances was a factual issue for the jury to decide. (*Franciscus*, *supra*, 55 F.2d at p. 849.)

14

Similarly, in *St. Paul Fire & Marine Ins. Co. v. Bachmann* (1932) 285 U.S. 112, 114-115 (*Bachmann*), the insured's tenant use of gasoline to operate its illegal moonshine stills sparked a fire, and the insurer refused coverage on the ground the insured violated its policy provision that held the insurer was not liable for hazards "increased by any means within the control or knowledge of the insured." The United States Supreme Court held the provision was "not violated[,] unless there [was] increase of hazard within the knowledge *and* control of the insured." (*Id.* at p. 116, italics added.)

The Eighth Circuit followed *Bachmann*, observing that it could "find no case holding that insurance has been forfeited under the increase of hazard clause in the absence of proof or knowledge on the part of the insured." (*American Mfrs. Mut. Ins. Co. v. Wilson-Keith & Co.* (8th Cir. 1957) 247 F.2d 249, 259.) The court reasoned: """The expression "control or knowledge," as used in the policy, is synonymous with "control and knowledge." Reasonably interpreted and construed favorably to the insured, "control" presupposes knowledge. It would be unreasonable to hold that a person had control of a thing of which he had no knowledge or to say that he had control of a dangerous substance when he did not know of its danger." [Citation.]'" (*Id.* at p. 259.) The court went on to cite over a dozen authorities that, in the court's view, supported the *Bachmann* court's interpretation of what constitutes "control or knowledge" in the context of an increase of hazard clause. (*Ibid.*; see *Goldman v. Piedmont Fire Ins. Co.* (3d Cir. 1952) 198 F.2d 712, 718 (dis. opn. of McLaughlin, J. ["the overwhelming majority of reported cases categorically support the principle" that an increase of hazard

15

in a fire insurance policy "must not only have been within the control of the insured but to his knowledge"]).)

The Oregon Court of Appeals relied on *Franciscus*'s analysis in *Farmers Ins. Co. of Oregon v. Trutanich* (1993) 123 Ore. App. 6, 15 (*Trutanich*), where a tenant's illegal methamphetamine lab damaged the insured-landlord's property. The insurer argued the landlord's insurance was void under an Oregon statute that allowed the insurer to deny coverage if """"the hazard is increased by means within the control or knowledge of the insured."""" (*Id.* at p. 14.) Relying on *Franciscus*, the *Trutanich* court agreed the methamphetamine lab was an increase in hazard, but there was "no evidence from which the jury could find that [the insured] in fact knew of that hazard, or that by exercising ordinary care or diligence he should have known that [the tenant] would cook methamphetamine in the house." (*Trutanich*, *supra*, at p. 15.) The court therefore rejected the insurer's argument that the insured increased a hazard within his control or knowledge. (*Id.* at pp. 14-16.)

We interpret these authorities to stand for the proposition that an insured increases a hazard "within its control" *only if* the insured is aware of the hazard or reasonably could have discovered it through exercising ordinary care or diligence. PSIC does not cite, and we cannot locate, any authority that suggests a landlord-insured is strictly liable for a hazard created by the insured's tenant even if the insured is unaware of the hazard.

It is undisputed the Mosleys did not know about Lopez's marijuana growing operation or his altering the property's electrical system. There is likewise no evidence

16

as to whether the Mosleys could have discovered Lopez's marijuana growing operation "by exercising ordinary care or diligence." On this record, we believe whether Lopez's conduct was "within the control" of the Mosleys is a fact issue for the jury to decide because the record is silent as to what, if anything, the Mosleys reasonably could have done to prevent or discover Lopez's marijuana growing operation. (See *Hodge v. Travelers Fire Ins. Co.* (App. Div. 1951) 16 N.J. Super. 258, 263 ["[I]t has been recognized that where the evidence presents a factual issue as to the landlord's knowledge and exercise of care it should be submitted to the jury for its determination."]; accord, *Schaffer*, *supra*, 183 Minn. at pp. 106-107; see *Trutanich*, 123 Ore. App. at p. 15 ["[T]here is no evidence from which the jury could find that defendant in fact knew of that hazard, or that by exercising ordinary care or diligence he should have known that someone other than [the insured's tenant] would cook methamphetamine in the house."].) Further, the trial court did not consider the issue, but instead apparently accepted PSIC's erroneous argument that Lopez's conduct was within the Mosleys' control simply because he was their tenant.

To the extent PSIC's interpretation of the Policy renders the Mosleys strictly liable for Lopez's conduct, the Policy is void under section 2071. By holding the Mosleys responsible for the damage Lopez caused, irrespective of the Mosleys' knowledge of his conduct or their responsibility for it, the Policy subjects the Mosleys to increased liability—and less favorable coverage that is not "substantially equivalent" to coverage provided under section 2071.

17

PSIC nonetheless asserts the Policy is valid because PSIC was entitled to add exclusions not contained in section 2071, such as the plant-growing exclusion. In support, PSIC relies on *Rizzuto v. National Reserve Ins. Co. (*1949) 92 Cal.App.2d 143 (*Rizzuto*), *Taylor v. Garrison Property and Casualty Insurance Company* (C.D. Cal. 2018) 2018 WL 5094912 (*Taylor*), and *Nationwide Mutual Fire Insurance Co. v. McDermott* (6th Cir. 2015) 603 Fed. App'x 374. None of these cases supports PSIC's contention.

In *Rizzuto*, the insureds' policy provided fire coverage for their business establishment "'while occupied only for barber shop purposes.'" (*Rizzuto*, *supra*, 92 Cal.App.2d at p. 144.) The insureds, however, rented out half of the building to a shop that cleaned and altered clothes. (*Ibid.*) After a fire damaged the building, the insurer denied coverage because it had not been "'occupied *only* for barber shop purposes'" given that half of the building was occupied by the clothing shop at the time of the fire. (*Ibid.*) The *Rizzuto* court held that, because the insureds violated the "'while occupied'" condition—a condition precedent to *any coverage* of the insured's building—the policy was suspended for the duration of the violation, so the insurer properly denied coverage for the fire damage. (*Id.* at pp. 145, 147.)

In *Taylor*, the insured obtained insurance for their home, which included a detached building that the insured used for her professional art studio ("'the Separate Structure'"). (*Taylor*, *supra*, 2018 WL 5094912, at *1.) After a fire caused by a faulty furnace damaged the Separate Structure, the insured sought coverage for the losses.

18

(*Taylor*, *supra*, at *1.) The insured denied coverage on the ground that the insured's policy did not cover structures used for "business," which the insured conceded included the Separate Structure due to her for-profit art studio. (*Id.* at *3.) The insured argued, however, that the policy violated section 2070 because the policy's "business use exclusion" reduced the insured's coverage below that required by section 2071. (*Id.* at *5.)

Relying on *Rizzuto*, the district court disagreed. (*Taylor*, *supra*, 2018 WL 5094912, at *5.) The *Taylor* court observed that the business use exclusion was "most similar to the increased hazard" clause in section 2071. (*Ibid.*) The *Taylor* court reasoned that *Rizzuto* "indicates that insurance providers may continue to specify the character of use of the property insured as a precondition for coverage or a condition suspending coverage without violating" section 2070. (*Taylor*, *supra*, at *5.) Thus, like the *Rizzuto* court, the district court in *Taylor* found that the insurer properly denied coverage because the insured intentionally used the property in a manner proscribed by the policy. (*Taylor*, *supra*, at *5.) In other words, the insured was not entitled to any coverage of the Separate Structure because, like the insured in *Rizzuto*, the insured failed to use the premises only for certain purposes—a condition precedent for *any coverage* of the Separate Structure. As the *Taylor* court put it, "the Separate Structure is covered unless it is being used in whole or in part for business, in which case coverage is suspended." (*Taylor*, *supra*, at *5.)

As in *Taylor* and *Rizzuto*, the insurer in *McDermott* properly denied coverage for fire damage caused by the husband's illegal marijuana growing operation because the insured violated her policy terms. (*McDermott*, *supra*, 603 Fed. App'x at pp. 374-375.) Specifically, by failing to report the operation to her insurer, the insured violated a provision in her policy that required her to inform the insurer of "'*any* change which may affect the premium risk under th[e] policy," including "changes . . . in the occupancy or use of the resident premises.'" (*Id.* at p. 377.) By failing to do so, the insurer was entitled to deny coverage under a policy provision that allowed the insurer to void the policy if the insured "'omitt[ed] any material fact . . . during the policy period.'" (*Ibid.*)

*Rizzuto*, *Taylor*, and *McDermott* do not control here.[2] In all three cases, the insureds intentionally used the covered buildings in a way that violated their respective fire policies and, accordingly, they were not entitled to *any coverage* because they personally breached their insurance contracts. That fact alone—which is not present here—permitted the insurers in all three cases to deny coverage. Further, in *Rizzuto*, the insured increased a hazard indisputably within its control and knowledge. (*Rizzuto*, *supra*, 92 Cal.App.2d at p. 148.) The *Rizzuto* court found there was "ample evidence" to support the trial court's finding that the insured's renting half the building to the cleaning shop "materially increased" a hazard risk because it was "self-evident" that the cleaning

---

[2] Although we find *Taylor* and *McDermott* are distinguishable, we also decline to follow them because *Taylor* is a trial court decision currently on appeal and *McDermott* is unpublished. (See *America Inc. Online v. Superior Court* (2001) 90 Cal.App.4th 1, 6 fn. 2 [court was "hardly inclined" to consider unpublished "out-of-state decisions"].)

shop's services "produced a fire hazard materially higher than that attending a barber shop." (*Ibid.*)

By contrast, the Mosleys did not breach their insurance contract with PSIC. Unlike the insureds in *Rizzuto*, *Taylor*, and *McDermott*, the Mosleys did not use the Property in a prescribed way that would have allowed PSIC to suspend their insurance and deny all coverage. More importantly, contrary to PSIC's assertion and the trial court's finding, there was no evidence Mosleys knowingly increased a risk of fire hazard. In addition, a fact issue remains as to whether Lopez's hazard-increasing conduct was within their control. If it was, then PSIC properly denied coverage. But by denying the Mosleys coverage for Lopez's conduct, regardless of the Mosleys' control over or knowledge of it, the Policy did not provide "substantially equivalent" coverage to that required under section 2071. We therefore reverse the trial court's order granting summary judgment to PSIC and affirm the trial court's order denying the Mosleys' motion for summary judgment.

We affirm the trial court's order denying the Mosleys' motion for summary judgment for an additional reason. As the trial court correctly observed, the Mosleys' motion for summary judgment failed to address both of their claims. Their separate statement in support of the motion "only addresse[d] (1) [their] first cause of action for breach of contract . . . and (2) the issue that defendant had a duty under the policy to pay the losses incurred by [the Mosleys]." The trial court therefore properly denied the Mosleys' summary judgment motion because it did not address their second cause of

21

action.  (*Jameson v. Desta* (2013) 215 Cal.App.4th 1144, 1165 [holding party must address all of the plaintiff's theories of liability to be entitled to summary judgment].)  In any event, as we explained below, we conclude PSIC is entitled to summary adjudication on that cause of action.

### 2. *Forfeiture*

At oral argument, counsel for PSIC argued the Mosleys forfeited any argument that Lopez's conduct was not within their "control or knowledge" because they did not address the issue in the trial court and their opening brief only addressed it in passing without argument or citations to the record.

PSIC raised the "control or knowledge" issue in their moving papers.  PSIC told the trial court that it "must determine whether PSIC's exclusion for plant growing operations substantially complies with the language of [s]ection 2071 and provides the insured with coverage that is substantially equivalent to that provided in the statute."  PSIC argued the Policy did provide such coverage because, under the standard form policy, "PSIC is not liable for a loss occurring due to an increased hazard."  Relying on *McDermott*, PSIC argued that the Mosleys' "loss would be excluded under the increased hazard provision in Section 2071 and is also excluded under PSIC's express exclusion for marijuana grow operations," so the Policy provided substantially equivalent coverage to that required by section 2071."  PSIC reiterated these arguments in its opposition to the Mosleys' summary judgment motion.

22

In both its moving papers and in opposition to PSIC's motion for summary judgment, the Mosleys argue Paragraph E's exclusion was not enforceable because it results in the Policy providing less favorable coverage than the standard form fire policy would provide. The Mosleys therefore argued the exclusion was void as a matter of law.

At the hearing on the motions, both parties agreed that their cross-motions for summary judgment presented the same issues. PSIC's counsel explained, "the issue before the Court truly is purely a legal question. There are no disputed facts as to the cause of the loss or the application of this exclusion to the loss, assuming it's enforceable. The *sole issue* before the this Court is plaintiff's claim that the exclusion in the [P]olicy is unenforceable per se because the coverage it affords under the [P]olicy is less favorable than what is provided under [section 2071]." (Italics added.)

PSIC's counsel further explained that, "[t]here's no dispute the [P]olicy exclusions, if it would be enforceable, would apply to this loss, and there's also no dispute the marijuana growing operation going on at the property increased the hazard of fire . . . . No one is claiming that did not increase the risk of the hazard of fire. There's also no dispute that this growing operation was under the control of the insured."

PSIC's counsel then argued, "[u]nder standard form policy, there is a provision providing that an insurer is not liable for a loss occurring while the hazard is increased by any means within the control or knowledge of the insured . . . . [T]he insurance company is not liable for loss occurring while the hazard is increased by any means within the control or knowledge of the insured . . . . The question for the Court is [whether] the

23

policy that we have [is] as favorable as the one that exists under 2017 which excludes coverage for fire losses that are caused by insured's conduct that increases the risk of first. Unfortunately that's what we have. There's no dispute that but for this growing operation, this fire wouldn't have occurred." PSIC's explained that the "[s]tandard form policy doesn't say that the hazard has to be unlawful conduct by an insured. It's anything an insured does that increases the risk of fire beyond what a reasonable person would be doing in a residential home which is, among other things, a marijuana grow operation."

After argument from the Mosleys' counsel, PSIC's counsel continued, "[t]he purpose of this exclusion is that the insurance company in this case has identified certain types of conduct that an insured can engage in that will increase the risk of first. Under [section] 2071, we are allowed to exclude those risks. We can use the broad and, frankly, fairly ambiguous language that appears in the standard form and get into an argument with every insured who wants to grow marijuana in their home did this or not increase the risk of fire."

After brief additional argument from counsel, the trial court stated it would take the matter under submission. The trial court then issued (1) an order granting PSIC's motion for summary judgment and (2) an order denying the Mosleys' motion for summary judgment. In granting PSIC's motion, the trial court found "as a matter of law that the fire coverage in the subject Policy is substantially equivalent to or more favorable to plaintiffs than the coverage in the standard form policy in Ins[urance] C[ode] [section]

24

2071." The trial court therefore found that, "[b]ecause the exclusion is valid and enforceable, there is no merit to plaintiffs breach of contract claim."

In denying the Mosleys' summary judgment motion, the trial court explained, "[w]hile California Insurance Code 2070 begins by stating that fire policies shall be on the standard form 2071, it provides for an exception when a policy provides coverage against perils other than fire, provided that the fire coverage is substantially equivalent to or more favorable to the insured than that contained in the standard form." The trial court then found, "[s]ection 2071 states that the insurer shall not be liable for loss when the hazard is increased by any means within the control or knowledge of the insured: *such occurred in this case*." The trial court therefore concluded the Mosleys "fail[ed] to establish that the subject exclusion is not substantially equivalent to or more favorable to them than the standard form, or that it is otherwise inconsistent with 2071."

In short, PSIC argued—and the trial court found—that the Policy provided the Mosleys coverage that was substantially equivalent to or more favorable than the standard fire insurance form. Based on that finding, the trial court granted PSIC's motion for summary judgment and denied the Mosleys' cross-motion for summary judgment. Because the trial court's orders turned on its conclusion that Lopez's conduct was within the Mosleys' control or knowledge, we necessarily must address that issue. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [appellate court exercises independent judgment in reviewing order granting summary judgment and applies the same analysis as the trial court].)

25

The fact that the Mosleys did not oppose PSIC's argument that Lopez's conduct was within their control or knowledge does not mean the trial court properly granted summary judgment on that basis. A party is entitled to summary judgment only if it meets its initial burden of showing there are no triable issues of fact and the moving party is entitled to judgment as a matter of law. (See Code Civ. Proc., § 437c, subd. (o)(2).) This is true even if the opposing party fails to file *any* opposition. (*Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1086-1087.) "The court's assessment of whether the moving party has carried its burden—and therefore caused a shift—occurs *before* the court's evaluation of the opposing party's papers. [Citations.] Therefore, the burden on the motion does not initially shift as a result of what is, or is not, contained in the opposing papers. And because a reviewing court employs the same three-step process in the course of its de novo review of a summary judgment [citation], this conclusion applies with equal force on appeal." (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 367-368.)

Accordingly, "[i]f the defendant [moving for summary judgment] fails to meet this initial burden [of production], it is unnecessary to examine the plaintiff's opposing evidence; the motion must be denied." (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 805.) For the reasons explained above, we conclude PSIC failed to meet its initial burden because an issue of fact remains as to whether Lopez's conduct was within their "control or knowledge." PSIC's motion for summary judgment therefore should have been denied—regardless of what the Mosleys did or did not argue in their opposition—

26

because the burden never shifted to them. (See *Denton v. City & County of San Francisco* (2017) 16 Cal.App.5th 779, 794 ["[E]ven without opposition, a court may not grant a motion for summary judgment unless it first determines that defendants have met their initial burden of proof."]; accord, *Reilly v. Inquest Technology, Inc.* (2013) 218 Cal.App.4th 536, 551 fn. 3 ["Reilly suggests the issue of whether the Act applied was waived due to Inquest's failure to oppose the summary adjudication motion. Not so. To prevail on the motion, the burden fell on Reilly to submit evidence sufficient to establish each element necessary to sustain a judgment in his favor."].)

D. *Breach of Implied Covenant of Good Faith and Fair Dealing Claim*

The trial court granted PSIC summary judgment on the Mosleys' claim for breach of the implied covenant of good faith and fair dealing in part because the court found there was a genuine coverage dispute between the parties. We conclude the trial court did not err in so finding.

"[T]here are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151.) An insurer is not liable for breaching the implied covenant if there is "'a genuine issue as to [the insurer's] liability under California law.' [Citation.]" (*Opsal v. United Services Auto. Assn.* (1991) 2 Cal.App.4th 1197, 1205-1206.) "'*[A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue*

27

*as to the insurer's liability*.' [Citation.]" (*Fraley v. Allstate Ins. Co.* (2000) 81 Cal.App.4th 1282, 1292.)

Thus, to succeed on a claim for breach of the implied covenant, the insured must show that "the insurer acted *unreasonably* or *without proper cause*." (*Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1072.) The insured must show the insurer's conduct "demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395.) Accordingly, "an insurer does not act in bad faith when it mistakenly withholds policy benefits, if the mistake is reasonable or is based on a legitimate dispute as to the insurer's liability." (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 949.) "An insurer which denies benefits reasonably, but incorrectly, will be liable only for damages flowing from the breach of contract, i.e., the policy benefits." (*Morris v. Paul Revere Life Ins. Co.* (2003) 109 Cal.App.4th 966, 977.)

We conclude PSIC acted reasonably in denying the Mosleys coverage. As our discussion above shows, there is no clear, controlling California law that establishes whether PSIC properly denied coverage—an issue that turns on whether Lopez's conduct was within the Mosleys' control, which remains to be determined. Under the unique circumstances presented and the lack of guiding California precedent, we think PSIC

reasonably interpreted Paragraph E as permissibly excluding coverage for the damage Lopez caused. On this record, PSIC cannot be liable for bad faith. We affirm the trial court's order granting PSIC summary judgment on the Mosleys' second claim for breach of the covenant of good faith and fair dealing.

## IV.

## DISPOSITION

The judgment is reversed. The trial court's order granting PSIC summary judgment on the Mosleys' first cause of action for breach of contract is reversed, but we affirm the trial court's order granting summary adjudication on the Mosleys' second cause of action for breach of the implied covenant of good faith and fair dealing. The trial court's order denying the Mosleys' motion for summary judgment is otherwise affirmed. The matter is remanded with directions to the trial court to enter an order granting summary adjudication in PSIC's favor on the Mosleys' second cause of action. Each side shall bear their own costs on appeal.

CERTIFIED FOR PUBLICATION

CODRINGTON

J.

I concur:

McKINSTER

Acting P. J.

MENETREZ, J., Dissenting.

The majority opinion works two significant changes in California law, one procedural and one substantive. First, the opinion reverses summary judgment on the basis of an argument that was not raised in the trial court. The opinion reasons that the argument was not forfeited because an appellant can always challenge summary judgment on the ground that the moving party did not carry its initial burden—the appellant need not have presented that argument to the trial court in order to preserve it for appeal. That is a new rule of California appellate procedure.

Second, the majority opinion alters the coverage of every fire insurance policy in California. It does so by interpreting the word "or," in a coverage exclusion, to mean "and." The opinion recognizes that there is no authority in California law for such an interpretation. (Maj. opn., *ante*, at p. 11 ["we have not located[] any binding California authority interpreting" the exclusion in question].) The opinion consequently bases its interpretation on various out-of-state authorities, primarily federal and Minnesota case law from the 1930s. Moreover, the majority opinion does this without the benefit of briefing by the parties. No party to this appeal has ever advocated the interpretation adopted by the majority opinion, and no party has ever briefed the interpretation's merits, pro or con.

I would not reach the policy interpretation issue on which the majority opinion is based, because the issue was not raised in the trial court and has not been briefed on

1

appeal.  Instead, I would address the arguments raised by appellants only to the extent that appellants preserved them by presenting them in the trial court first.  Because the properly preserved arguments raised by appellants are meritless, I would affirm.  I therefore respectfully dissent.

I.

Pacific Specialty Insurance Company (PSIC) issued a homeowner's policy for a home owned by James and Maria Mosley.  Years later, the Mosleys rented the home to a tenant who used it to operate an indoor marijuana-growing operation.  In connection with that operation, the tenant modified the home's electrical wiring in order to bypass the meter and steal electricity from the grid.  The illegal wiring caused a fire, damaging the home.

The Mosleys submitted a claim under their policy, but PSIC denied the claim because of the policy's exclusion of coverage for damage resulting from "any manufacturing, production or operation, engaged in:  1. The growing of plants; or 2. The manufacture, production, operation or processing of chemical, biological, animal or plant materials."  The Mosleys retained a public adjuster to assist them in pursuing their insurance claim, but the public adjuster agreed with PSIC that coverage was excluded.  Undaunted, the Mosleys sued PSIC for breach of contract and bad faith.

PSIC moved for summary judgment on the ground that the claim was properly denied under the exclusion for plant-growing operations.  PSIC's motion also addressed Insurance Code section 2070, which requires that all fire insurance policies in California

2

provide coverage that "is substantially equivalent to or more favorable to the insured than that contained in" the standard form fire insurance policy of Insurance Code section 2071.[1]  The standard form policy contains an exclusion for any "loss occurring . . . while the hazard is increased by any means within the control or knowledge of the insured."  (§ 2071.)  PSIC argued that the illegal wiring increased the hazard and was within the control or knowledge of the Mosleys, bringing the loss within the scope of that exclusion.  ("What occurs in [p]laintiffs' home is certainly under their control.")  Thus, because coverage would have been excluded under the standard form policy, the actual policy provided substantially equivalent coverage, so its exclusion of coverage was valid and enforceable.

The Mosleys' opposition to PSIC's summary judgment motion did not argue that PSIC failed to carry its initial burden in any respect.  In particular, the Mosleys did not argue that PSIC failed to carry its initial burden of showing that the existence of the marijuana growing operation or the illegal electrical wiring was within the Mosleys' knowledge or control.  Nor did the Mosleys argue that the actual policy's exclusion for plant growing operations did not apply to their claim, or that the standard form policy's increased hazard exclusion did not apply, or that there were disputed issues of fact as to any of those issues.  Instead, the Mosleys argued that (1) PSIC could not rely on the exclusion for plant growing operations as a basis to deny coverage because that exclusion

_____

[1]  Subsequent statutory references are to the Insurance Code unless otherwise specified.

3

was not part of the standard form policy, and (2) PSIC could not rely on the increased hazard exclusion in the standard form policy because that exclusion was not part of the actual policy.

The trial court granted PSIC's motion. It concluded that the exclusion in the actual policy was "valid and enforceable" and that the actual policy provided coverage that was "substantially equivalent to or more favorable to plaintiffs than" the coverage provided by the standard form policy. The court also denied the Mosleys' cross-motion for summary judgment, and it accordingly entered judgment for PSIC.

## II.

The majority opinion reverses on the following grounds: (1) The standard form policy's increased hazard exclusion applies only to increased hazards that are "within the control or knowledge of the insured" (§ 2071); (2) as used in the exclusion, "or" actually means "and," so the exclusion applies only if the increased hazard was within the insured's control *and* the insured knew or should have known that the hazard existed; (3) PSIC did not introduce evidence that the Mosleys knew or should have known about the marijuana growing operation and illegal electrical wiring; so (4) PSIC failed to carry its initial burden of introducing evidence that the increased hazard exclusion applies. (Maj. opn., *ante*, at pp. 11-17.)

The pivotal substantive step in the analysis is (2), the conclusion that "or" means "and." That conclusion affects every fire insurance policy in California, because it is an interpretation of an exclusion in the standard form policy of section 2071, and every fire

4

insurance policy in California must provide coverage that is substantially equivalent to, or at least as favorable to the insured as, the standard form policy.  (§ 2070.)

But the pivotal procedural step in the majority opinion's analysis comes earlier:  It is the decision to address the issue at all.  In the trial court, the Mosleys did not argue that PSIC failed to carry its initial burden of introducing evidence that the increased hazard exclusion applies.  Nor did the Mosleys argue that "or" means "and."  In fact, to this day the Mosleys have never argued that "or" means "and."[2]

"Ordinarily the failure to preserve a point below constitutes a [forfeiture] of the point.  [Citation.]  This rule is rooted in the fundamental nature of our adversarial system: The parties must call the court's attention to issues they deem relevant."  (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28.)  "The same policy underlies the principles of 'theory of the trial.'  'A party is not permitted to change his position and adopt a new and different theory on appeal.  To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing party.' [Citation.]  The principles of 'theory of the trial' apply to motions [citation], including

---

[2]  Again, in the trial court the Mosleys argued only that (1) PSIC could not rely on the plant-growing operation exclusion because it was not contained in the standard form policy, and (2) PSIC could not rely on the increased hazard exclusion because it was not included in the actual policy. The Mosleys' arguments on appeal are largely extended versions of those same arguments.  The arguments are frivolous.  PSIC can rely on the plant-growing operations exclusion in the actual policy as long as (1) it meets the general requirements for an exclusion to be valid and enforceable (*Regional Steel Corp. v. Liberty Surplus Ins. Corp.* (2014) 226 Cal.App.4th 1377, 1394), and (2) coverage would also have been excluded under the standard form policy (*Century-National Ins. Co. v. Garcia* (2011) 51 Cal.4th 564, 567-569, 573).

5

summary judgment motions.  [Citation.]  . . . It would be manifestly unjust to the opposing parties, unfair to the trial court, and contrary to judicial economy to permit a change of theory on appeal."  (*Id.* at p. 29.)  The forfeiture rule and its application to summary judgment appeals are established beyond question in California case law.  (See, e.g., *Venice Coalition to Preserve Unique Community Character v. City of Los Angeles* (2019) 31 Cal.App.5th 42, 54 (*Venice Coalition*); *Jimenez v. 24 Hour Fitness USA, Inc.* (2015) 237 Cal.App.4th 546, 567 (*Jimenez*); *NBCUniversal Media, LLC v. Superior Court* (2014) 225 Cal.App.4th 1222, 1237 (*NBCUniversal*); *Kendall v. Walker* (2009) 181 Cal.App.4th 584, 596 (*Kendall*); *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 675-677 (*DiCola*).)

The majority opinion declines to apply the forfeiture rule for three reasons, none of which has merit.  First, the opinion describes at length the extent to which (1) *PSIC argued* in its summary judgment motion that the increased hazard exclusion applied, and (2) *the trial court determined* that it applied.  (Maj. opn., *ante*, at pp. 22-25.)  But none of that shows that *in opposition to summary judgment the Mosleys argued* either that the increased hazard exclusion did *not* apply, that PSIC had failed to carry its initial burden, or that there was a disputed issue of fact on the issue.  The Mosleys needed to present those arguments to the trial court in order to preserve the arguments for appeal.  PSIC did not preserve the arguments for the Mosleys by arguing the contrary position, and the trial court did not preserve the arguments for the Mosleys by agreeing with PSIC.

6

Second, the majority asserts that "[b]ecause the trial court's orders turned on its conclusion that [the tenant's] conduct was within the Mosleys' control or knowledge, we necessarily must address that issue.  (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [appellate court exercises independent judgment in reviewing order granting summary judgment and applies the same analysis as the trial court].)"  (Maj. opn., *ante*, at p. 25.)  Thus, the opinion reasons that because an order granting summary judgment is subject to independent review on appeal, we must address any issues on which the order was based.  That reasoning represents a misunderstanding of independent review.

In general, the standard of review "'prescribes the degree of deference given by the reviewing court to the actions or decisions under review.'"  (*San Francisco Fire Fighters Local 798 v. City and County of San Francisco* (2006) 38 Cal.4th 653, 667.)  When we review a ruling independently, we give it no deference.  (*Rideau v. Stewart Title of California, Inc.* (2015) 235 Cal.App.4th 1286, 1295.)  But our review is still limited to the arguments that the appellant (1) presents on appeal and (2) preserved by presenting them in the trial court.  (See, e.g., *Laabs v. Southern California Edison Co.* (2009) 175 Cal.App.4th 1260, 1271, fn. 5 [even on independent review of an order granting summary judgment, our review is limited to the arguments raised on appeal by the appellant]; *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 372 [same]; *Mark Tanner Construction, Inc. v. HUB Internat. Ins. Services, Inc.* (2014) 224 Cal.App.4th 574, 583-584 [same]; *Venice Coalition*, *supra*, 31 Cal.App.5th at p. 54 [even

on independent review of an order granting summary judgment, our review is limited to arguments the appellant preserved by raising them in the trial court]; *Jimenez*, *supra*, 237 Cal.App.4th at p. 567 [same]; *NBCUniversal*, *supra*, 225 Cal.App.4th at p. 1237 [same]; *Kendall*, *supra*, 181 Cal.App.4th at p. 596 [same]; *DiCola*, *supra*, 158 Cal.App.4th at p. 676 [same]; *Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 873 ["Plaintiff's duty was to direct the court's attention to any different factual basis of liability on which he could rely. Plaintiff failed to do this, and forfeiture is appropriate. Indeed, if this were permitted procedure, parties opposing and losing summary judgment motions could attempt to embed grounds for reversal on appeal into every case by their silence"].)

Thus, independent review of a summary judgment ruling does not mean that we decide the summary judgment motion ourselves, starting from scratch and independently of the arguments presented in the trial court and on appeal. Nor does it mean that we "necessarily must address" every issue on which the trial court's ruling depended. (Maj. opn., *ante*, at p. 25.) Rather, it means that in evaluating the arguments that the appellant raises on appeal and preserved by presenting them in the trial court, we give no deference to the trial court's ruling. The majority opinion's reasoning is thus legally erroneous— independent review does not mean what the opinion claims it means.

The majority opinion makes a similar mistake when it cites *Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339 (*Y.K.A. Industries*) for the proposition that when reviewing an order granting summary judgment, we follow the same three-step process as the trial court, namely, examining the pleadings

8

to identify the issues, the motion to see if the initial burden was carried, and the opposition to see if there are triable issues of fact. (Maj. opn., *ante*, at p. 26.) Analysis of a summary judgment motion, whether in the trial court or on appeal, must always fit that three-step structure, but that does not mean that we must analyze each step regardless of what the appellant argues on appeal or argued in the trial court. For example, in *DiCola*, *supra*, 158 Cal.App.4th 666, the Court of Appeal expressly declined to address the appellant's argument that the respondents had not carried their initial burden, because the appellant had not presented that argument in the trial court. (*Id.* at p. 676.) The court explained, "Though this court is bound to determine whether defendants met their threshold summary judgment burden independently from the moving and opposing papers, we are not obliged to consider arguments or theories, including assertions as to deficiencies in [respondents'] evidence, that were not advanced by plaintiffs in the trial court." (*Ibid.*) That is, even though we review the order independently, and even though our analysis must fit the usual three-step structure (pleadings, initial burden, opposition), our review is still limited to arguments that the appellant raises on appeal and preserved by presenting them in the trial court.

Third, the majority opinion reasons that because PSIC failed to carry its initial burden in support of its summary judgment motion, the motion should have been denied "regardless of what the Mosleys did or did not argue in their opposition," so we must reach the issue even though the Mosleys did not raise it in the trial court. (Maj. opn., *ante*, at pp. 26-27.) That is, the moving party's failure to carry its initial burden on

9

summary judgment is an exception to the forfeiture rule and may be raised on appeal even if it was not presented in the trial court.  The opinion relies principally upon *Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081 (*Thatcher*) as support for that line of reasoning, but such reliance is misplaced.  In *Thatcher*, the trial court granted summary judgment solely on the basis that no opposition was filed, consistent with a local rule providing that failure to file opposition to a motion could be deemed an admission that the motion was meritorious.  (*Id*. at p. 1084.)  The Court of Appeal affirmed because the motion was in fact meritorious, but the court also held that the local rule was invalid as applied to summary judgment motions because such motions cannot be granted by default.  (*Id.* at pp. 1083, 1086.)  Rather, the court explained, a trial court cannot grant summary judgment without first determining that the moving party has carried its initial burden.  (*Id.* at p. 1086.)

    *Thatcher*'s holding is irrelevant, because here the trial court did not grant summary judgment by default.  The Mosleys filed opposition, the trial court considered it, and the trial court determined that PSIC had carried its initial burden and that there were no disputed issues of material fact.[3]

---

[3]  The other cases cited in the majority opinion on this point are no more helpful than *Thatcher*, *supra*, 79 Cal.App.4th 1081.  In *Y.K.A. Industries*, *supra*, 174 Cal.App.4th 339, the appellant argued in the trial court that the respondent did not carry its initial burden on summary judgment, and the Court of Appeal reversed on the basis of an argument that the appellant raised both in the trial court and on appeal.  (*Id.* at pp. 351, 365-366.)  In *Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, the court did not discuss forfeiture or waiver at all; it reversed summary judgment because there were disputed issues of material fact.  (*Id.* at p. 802.)  In *Denton v. City and County of San Francisco* (2017) 16 Cal.App.5th 779, the trial court granted summary judgment by default—the

*[footnote continued on next page]*

*Thatcher* does not hold that the moving party's failure to carry its initial burden on summary judgment is an exception to the general rule that arguments not presented in the trial court are forfeited. Moreover, the majority opinion's application of such an exception in this case is particularly inequitable. PSIC's summary judgment motion on its face appeared to be complete and well supported. The motion cogently argued that the undisputed facts showed that all of the Mosleys' causes of action failed as a matter of law, and the motion was accompanied by supporting evidence. The Mosleys filed written opposition and did not argue that PSIC had failed to carry its initial burden. The trial court did not take any shortcuts. It evaluated the arguments and evidence presented by the parties, determined that PSIC had carried its initial burden, rejected the Mosleys' meritless arguments in opposition, and accordingly granted the motion. Given the majority opinion's approach, however, the trial court was required to do much more than that in order to avoid reversal—it had to locate out-of-state authorities from the 1930s that no party has ever cited (even on appeal), synthesize them into an interpretation of section 2071 that no party has ever advocated (even on appeal), and use that interpretation to support an argument that the Mosleys did not make, namely, that PSIC had failed to carry its initial burden. This case thus presents a clear illustration of the

plaintiff was never "given any fair opportunity to oppose" the motion, and it did not appear that "the moving papers were ever reviewed" by the trial court. (*Id.* at pp. 782, 792, 795.) The Court of Appeal reversed because the trial court abused its discretion by denying a request for a continuance of the summary judgment hearing and also by denying a subsequent motion for new trial. (*Id.* at p. 794.) And in *Reilly v. Inquest Technology, Inc.* (2013) 218 Cal.App.4th 536, the Court of Appeal concluded that summary adjudication was properly granted and that the appellant's argument against that ruling was barred by the doctrine of invited error. (*Id.* at pp. 551-553.)

11

reasons for the forfeiture rule: "It would be manifestly unjust to the opposing parties, unfair to the trial court, and contrary to judicial economy to permit a change of theory on appeal."[4] (*North Coast Business Park v. Nielsen Construction Co.*, *supra*, 17 Cal.App.4th at p. 29.)

For all of the foregoing reasons, I respectfully dissent. The properly preserved arguments raised by the Mosleys on appeal are meritless, so I would affirm the judgment in favor of PSIC.

MENETREZ      

J.

---

[4] Even on appeal, the Mosleys raise the argument in such a cursory fashion that, in my view, they have forfeited it again. The argument consists of the following two sentences, which appear on the second-to-last page of the argument section of the Mosleys' opening brief: "Even if the increased risk condition had been a part of the policy, PACIFIC could not have used it as a ground for its motion for summary judgment as PACIFIC produced no evidence that the insured, James Mosley, had any knowledge of the rental of the property, or any control of the property. The increase of hazard condition applies only to such knowledge or control of the named insured." Those two sentences are not accompanied by any citation to the record or to legal authority. "[F]ailure to provide legal authorities to support arguments forfeits contentions of error." (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948.) Failure to cite the record may likewise result in forfeiture. (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970.) And failure to support a point with reasoned argument constitutes yet another basis for forfeiture. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived"].)